TURNER V. SMITH AND ANOTHER.

See this case as to the statute of limitations in connexion with trusts.

The statute of limitations of two years will run against the owner of personal property, who has established a trust upon it, in favor of the possession of the *cestui que trust*, where the latter sets up an open, public claim to the property adverse to the owner and to the continuance of the trust, from the time when such adverse claim is brought home to the knowledge of the owner.

It seems that a power to sell and pay a debt may be executed, (where the property is in possession of the trustee,) after the debt is barred by the statute of limitations ; but however that may be, the debtor cannot recover the property from the purchaser without restoring the price.

Where the *cestui que trust*, when sued for the property which was personal, by the owner who had raised the trust to sell and pay a debt, pleaded adverse possession for two years, and afterwards delivered the property to the trustee and caused it to be sold under the trust, and became himself the purchaser, and pleaded also the title so acquired, it was said to admit of a question whether the *cestui que trust*, by subjecting the property to sale under the deed of trust, ought to be held to have relinquished his previously acquired title.

Where a debtor conveys property in trust to be sold to pay debts, he cannot maintain an action to recover the property from a purchaser at the sale, (although that purchaser be the creditor,) because of defects in the sale, without refunding the purchase money, or offering to refund it. (This was as far as the case required the opinion to go.—REP.)

Error from Brazoria. Suit instituted by plaintiff in error 6th September, 1844, against Morgan L. Smith and John Adriance, for the recovery of a slave, named Jim, and his hire, &c. Defendants pleaded a general demurrer, general denial, statute of limitations, and title in themselves by purchase at Sheriff sale as the property of John D. Moore, who had purchased from Edwin Waller, they, the said Waller, Moore and defendants, having held and possessed said slave continuously as their own since the 20th July, 1842; and also, (by amendment,) by purchase at a sale made by Leonard Groce, after suit brought, as trustee, under a power created by the plaintiff, to secure the payment of a debt to Edwin Waller.

The facts were as follows : plaintiff proved that he owned the boy, in 1841, his value, and the value of his services annually.

Defendant proved Waller's possession of the boy, using him as his property, in July, 1842; that at the close of 1842, or early in 1843, Waller sold said boy to Moore, who continued to use and possess said boy as his own until about the close of 1843, or early in 1844, when he was sold under execution as the property of Moore, and purchased by the defendants; the witness did not recollect hearing Waller say, when he saw said boy in his possession, in 1842, any thing about his owing him.

Plaintiff then read in evidence a deed of trust, dated August 17th, 1841, from Turner to Groce, of five negroes including the boy Jim, to secure the payment to Waller of six thousand dollars, with authority to sell "as soon after the 1st day " of January, next, A. D., 1842, when informed by said Wal- " ler that the said Turner has failed and neglected to pay his " aforesaid debt of six thousand dollars, or at least three thou- " sand dollars thereof, to the said Waller, his heirs or assigns, " by giving ten day's notice in any public newspaper in the " Republic of Texas, and with the moneys arising from the " sale of said five negroes, pay and discharge the aforesaid " debt, or that part of said debt, due as follows, to wit: one " thousand dollars due on the first day of October, 1841, and " two thousand dollars due on the first day of January, 1842, " and the surplus, if any remains after fulfilling the trust " aforesaid, pay over and return to the said Turner." The deed of trust recited that it was given to secure the payment of the purchase money of a tract of land sold by Waller to Turner, and that it was made in pursuance of an agreement to that effect in the articles of purchase. He then proved that a sale of the said boy Jim was made under said deed of trust, at Columbia, on the 6th of May, 1848; that said sale was advertised in the Morning Star, a newspaper published in Houston, Harris county, for upwards of ten days before said sale; that there was no newspaper in Brazoria county; that the sale was made by Groce, six or eight persons present; no one bid except Morgan L. Smith, who bid the boy off for the defend-

ants, at $350; witness presumed Smith brought the boy to
the sale; he made no objection to the sale; knew that Smith
had been in possession of the boy some time previous to the
sale; that Groce exhibited a writing from Waller requesting
Groce to make said sale.

The defendants then read in evidence, (the plaintiff except-
ing in general terms,) the deed from Groce to them. It recit-
ed the deed of trust; that Waller had informed the trustee
that a portion of the said sums of one thousand dollars and
two thousand dollars, had not been paid; that he, the trustee,
had been requested by Morgan L. Smith, the present owner of
the balance due on said two amounts, to proceed and sell said
negro boy Jim, in pursuance of said trust; that Smith &
Adriance had paid the purchase money, $350, "for which
"Smith, the present owner of the said debt, has this day re-
"ceipted to me," &c. They then read the note of Turner for
$1000 due October 1st, 1841, indorsed September 19th, 1841,
to bearer. On this note was indorsed a receipt, dated April
15th, 1842, for $532, 87, in cotton, and $467, 13, "as on ac-
"count sale of negroes which were named in the deed of
"trust." They also proved that the other note was lost in
1844; that there was then due on it upwards of $1000; that
said note had been transferred to Smith previous to the month
of April, 1848; that said sale on the 6th of May, 1848, was
made, and the proceeds applied to the balance due on the said
two notes. The defendants then proved a judgment against
Moore for $50, assigned to Turner; a sale of the boy Jim, in
satisfaction thereof, in January, 1844, for $300, to the defend-
ants. This amount was paid by the Sheriff to the defendants
on a mortgage which they held from Moore on the boy Jim;
and there was a receipt, without date, by Turner to the Sheriff,
through the hands of the defendants, for the amount of the
judgment, under which the boy was sold. It was proved that
Turner at the time he received the money, "knew that the
"boy Jim had been sold to raise the amount of said execu-
"tion;" that he at first objected to giving the receipt for the

amount of said execution, on the ground that it might affect his right to the boy, but he afterwards accepted the money and gave the receipt. Defendants then proved that Waller had possession of the boy Jim as early as March or April, 1842; that Waller, at that time, claimed to hold said boy Jim, and the other four slaves mentioned in the deed of trust to Groce, by virtue of a sale made under said deed of trust; but witness did not recollect that Waller stated the particulars about said sale.

The plaintiff then proved by a witness, that he saw Waller come to the house of W. Hansborough, where he lived, with this negro and other negroes, in the night time, about daylight; and said he had taken them, about eleven o'clock at night, from the place of Mr. Brown, where they had been for some time previous; that he had previously considered the negroes to be Turner's; that Waller carried them from Hansborough's place to his, Waller's place, in the morning openly and publicly.

The defendants then proved by a witness, that sometime before July, 1842, Turner told him that Waller had this boy, and that he, Turner, intended to bring suit for the said boy, because he did not think that the sale under his deed of trust to Groce, under which Waller claimed said boy, was legally or fairly made.

There was a bill of exceptions in general terms to the admission of the execution under which the boy Jim was sold to the defendants; also to the admission of the deed of trust from Moore to the defendants.

The following instructions were asked by the plaintiff and refused by the Court:

"4th. That if the jury believe, that at the time the sale "was made at Columbia, the notes, to secure which the deed "of trust (under which the sale was made) was given, were "barred by the statute of limitatians, then the trustee had no "power to sell.

"5th. That the deed of trust itself would cease to be the

" foundation of an action four years after the time at which an " action could be brought upon it.

" 6th. That any act predicated upon said deed four years " after the time at which a suit could have been brought upon " it, would be nugatory.

" 9th. That the possession of the negro by Groce, at the sale, " in Columbia, was the possession of the plaintiff, and would " itself defeat the defendants plea of the statute, so far as they " claim under such sale.

" 12th. That the jury must believe that the defendants have " made out a good claim under one or the other or all the titles " he sets up.

" 13th. That the possession of Waller was the possession of " Turner.

" 14th. That Waller, if he had any title, must hold under " deed from the trustee after sale made in strict compliance " with the deed of trust; and that no wrongful or clandestine " taking of the negro would put Waller in possession adverse " to Turner.

" 17th. That Smith admitted the title of the negro to be in " Groce, the trustee, by delivering the negro to him to be sold " to pay Turner's debts; and by accepting a deed from Groce, " the trustee, he is estopped from showing the title to be in " any one else than Groce, as trustee for Turner.

" 18th. That Smith & Adriance could take no title under a " sale made under the deed of trust after the institution of " the suit."

Verdict and judgment for defendants; motion for new trial overruled; writ of error by plaintiff.


*W. Alexander*, for plaintiff in error. The plaintiff having proved the facts alleged which constituted his cause of action, was entitled to judgment; unless his cause of action is confessed and avoided, and the matters pleaded in confession and avoidance are sufficient in law, and sustained by evidence.

The amended answer of defendants, relying among other

matters upon two years adverse possession, and setting up the sale under the deed of trust by Groce, pending suit, and after the notes were barred, disclosed no defence, and should have been treated as a nullity by the Court. (2 Tex. R. 376.)

The promissory notes (and the deed of trust to secure their payment) could not be affected by the lapse of two years.— Being contracts in writing, they were subject to the statutory bar of four years, and to none other. The *cestui que trust* (Waller) could not acquire a prescriptive title against the plaintiff by two years adverse possession, even if he had held the negroes, embraced in the deed of trust, continuously for that length of time. Neither Moore nor the defendants occupied a more favorable position in contemplation of the law (or of equity) than the *cestui que trust* (Waller) through whom they deraign title. They were affected by constructive notice of title, by the record of the deed of trust in Brazoria county; and, besides, their conduct as shown by the statement of facts, establishes that they had actual notice.

The *cestui que trust* after carrying off the negroes at eleven o'clock at night, and selling the one involved in this suit, could not enforce the trust. He would have had to do equity—to deliver all of the negroes embraced in the trust to either the plaintiff in person, or to Groce, the trustee: and to account for their hire strictly; before the trustee would be authorized to sell. And even then, he must have done equity, before the period of prescription upon the notes respectively, had expired. (1 Tex. R. 50.)

Even if two, instead of four years, were the period of prescription applicable to this case, the defence must fail. Under our system of jurisprudence the legal title is held to continue in the appointer of the trust, the plaintiff in this suit, (*vide* Sampson *et al.* v. Williamson and Wife, (6 Tex. R. 102,) and in consequence the ruling spirit of the authorities that the statute does not run between the trustee (here the appointer) and *cestui que trust* protects the plaintiff. (1 J. J. Marsh. 370; Id. 401; 4 Johns. Ch. R. 224; 2 Desau. 53;

78

Id. 238; 3 Littel, 177; 3 Haywood, 221; 3 Verm. R. 212; 3 Humph. Tenn. R. 586; 5 Johns. Ch. R. 524; Angell on Lim. 136; see also, Wheeler on Slavery, 82; 3 J. J. Marsh. 103.)

The possession of Waller not being inconsistent with the trust or with the title of the plaintiff, and Waller being legally accountable for the hire of the negroes, there was no necessity for the plaintiff to sue him. Waller sold to Moore in the latter part of 1842 or early in 1843 (and no written evidence of sale is relied on) within two years from which time (viz: Sept. 6th, 1844) plaintiff commenced suit. He could not have been required by law, to have discovered the first amotion of his possession before it occurred, or to have sued for the negro before he discovered that he was in the hands of one claiming adversely to, and inconsistently with, his title. The first fraud committed by Waller, that might affect his title when aided by prescription, was the fraudulent sale to Moore. In cases of fraud, the statute begins to run from the time of the discovery of the fraud. (Cook's R. 185; 1 J. J. Marsh. 401; 4 Id. 77; 3rd Desau. 223; 4 Id. 474; 1 McCord's Ch. R. 314; 3 Monroe, 40; 3 Leigh, 729; 1 Hill, 121; 6 Yerger, 60; 4 Dana, 226; 4 Blackf. 77.)

The sale by Groce as trustee on May 6th, 1848, whether made at the request of Waller, after he had no interest in the trust; or at the instance of Smith, after the notes were barred, could only operate as an admission on the part of defendants; and as an estoppel upon them, upon Waller and upon Groce. (5 Dana, 55.) The delivery of the negro to Groce, at the time of the sale, was an act *in pais* to the same effect. They, by means of the delivery and sale, admitted the title and possession to be in Turner at the date of the sale, and were estopped by their fraudulent acts *in pais* from setting up any title adverse to Turner on the trial of the pending suit. The trustee (Groce) is not merely estopped *in pais*; but by his deed under seal.

The plaintiff, however, relied upon his position, that the

four years and not the two years provision of the statute of limitations, is the only one that could, under any circumstances, be applicable to the original contracts, and to this case. An application of the two years provision would be a violation of the well known rule of construction: that statutes are to be construed so as, if possible, all may stand. If the two years provision be applied to this case, it will be by reason of a construction which will cause it to virtually repeal and abrogate the statute of frauds. All contracts arrising under that statute are only barred by the lapse of four years. The fraud of the *cestui que trust* could not accelerate the running of the statute ; nor could it cause the statutes to begin to run before he sold to Moore.

The attention of the Court is particularly directed to the charges asked by the plaintiff and refused : and to the charges given in behalf of the defendants.

An inspection of the charges refused on the one hand, and given on the other, it is believed, will satisfy the Court that on account of the charges as well as of the errors previously pointed out, the cause ought to be reversed.

The attention of the Court is also called to White & Ludor's Leading Cases in Equity, top page 421.

That the conduct of Smith, Adriance, Moore, Waller and Groce were fraudulent, will appear from 4 Tex. R. 75 ; 5 Id. 141 ; 7 Id. 603 ; 9 Id. 85, 285, 536. It was not incumbent on Turner, if he chose to take advantage of the fraudulent attempt to entrap him, to tender them back the credits given him on the sale of the Deputy Sheriff in Matagorda. No principle of equity required him to do so.

*H. McQueen*, also, for plaintiff in error.

*Harris & Pease*, for defendants in error.

WHEELER, J. It is insisted on behalf of the appellant, that the statute of limitations did not apply as between the plain-

tiff and Waller, the *cestui que trust*, under whom the defendants claimed, by reason of the relation between them created by the deed of trust; and, consequently, that the plea of the statute cannot avail the defendants.

It, doubtless, is the well settled rule that direct technical trusts, as between trustee and *cestui que trust*, are not affected by the statute of limitations, so long as the trust subsists. For, "if the trustee is in possession and does not execute his trust, "the possession of the trustee is the possession of the *cestui* "*que trust*; and if the only circumstance is, that he does not "perform his trust, his possession operates nothing as a bar, "because his possession is according to his title." But a trustee may disavow and put an end to the trust; and then the rule does not apply. In Angell on Limitations, (p. 471,) it is said, "Though it has invariably been maintained that the "Statute of limitations does not apply directly to trusts of the "nature above considered, (that is, express, technical trusts,) "yet it has ever been as invariably maintained, that if a trus- "tee should deny the right of the *cestui que trust*, and as- "sume absolute ownership of the property he holds in trust, "he abandons his fiduciary character, and the *cestui que trust* "must commence legal proceedings within six years there- "from."

"There can be no stronger case put," (it has been said,) "to illustrate the doctrine, that the statute does not run "against an established and continuing trust, than that of "landlord and tenant. On general principles, the tenant is "not permitted to dispute the landlord's title. Having entered "under that title, he can set up no adversary title to protect "his possession. And yet, if he publicly disclaim his land- "lord's title, and profess to hold under a hostile title, the stat- "ute of limitations will begin to run from the time of such disclaimer." (2 McLean, C. C. R. 376.)

The principle of estopel, (it is said,) applies to the relation between landlord and tenant, and operates with full force to prevent the tenant from violating the contract, by which he

claimed and held possession.   He cannot change the character of the tenure, by his own act merely, while the relation subsists, so as to enable him to hold against his landlord, who reposes under security of the tenancy, believing the possession of the tenant to be his own, held under his title, and ready to be surrendered by its termination by the lapse of time, or a demand of possession.   The same principle applies to a mortgagor and mortgagee, trustee and *cestui que trust*, and, generally, to all cases, where one man obtains possession of the property belonging to another, by a recognition of his title. Yet, where the tenant disclaims to hold under his lease, he becomes a trespasser, and his posession is avderse, and as open to the action of his landlord, as a possession originally acquired by wrong.   The relation of landlord and tenant is dissolved, and each party is to stand upon his right.   (3 Peters. R. 47–49.)

So of the relation of trustee and *cestui que trust*, if an open, public, adverse claim is set up by the former against the latter, such open denial or repudiation of the trust, brought home to the parties in interest, determines the trust relation. It ceases, from the time of such adversary claim, to be a subsisting trust; and the statute commences to run in favor of the adverse possession.

The question how far trusts are exempted from the operation of the statute, was considered by this Court in the case of Tinnen v. Mebane, (10 Tex. R. 246,) and in the more recent case of Wingate v. Wingate, at the present Term.   The general rule is recognized, that a direct, technical, subsisting trust, as between trustee and *cestui que trust*, is not affected by the statute.   " But even this rule," (it was said in the former case,) " loses its force, where the trust is repudiated by " acts or words of the parties.   Where, for instance, the trus- " tee, in disregard of the *cestui que trust*, claims absolute own- " ership in himself, the latter will be barred by the law of lim- " itations, and the rules in relation to the effect of the lapse of " time, in other similer cases."

Applying the law, thus settled, to the present case, there can be no doubt, we think, that the statute of limitations ran in favor of the possession of Waller, from the period when he set up an open, public claim to the property, adverse to the plaintiff, by assuming the absolute ownership, and his open denial and repudiation of the trust was brought home to the plaintiff; as it appears, by the evidence, it was, more than time sufficient to bar the plaintiff's right of action, before he commenced his suit. Waller had no right to the possession, either before or after the maturity of the debt secured by the deed of trust; unless, upon the execution of the trust, he had become the purchaser. And in that case his title and possession were adverse to the title of the plaintiff. In reference to real estate, and the principle is the same as to personal property, the Supreme Court have said, "If the entry was by "purchase, and the purchaser claims the land in fee, he is not "a trustee; his title, though derivative, is adverse to that of "the vendor; he enters and holds for himself." (10 Peters, R. 223.) "The vendee acquires the property for himself, and "his faith is not pledged to maintain the title of the vendor." (4 Id. 506.) "The vendee is in no sense the trustee of the "vendor, as to the possession of the property sold: the vendee "claims and holds in his own right, for his own benefit." (10 Id. 224.)

The evidence warrants the conclusion that there had been a sale of the property under the power contained in the deed of trust, at which Waller became the purchaser; and that it was by virtue of his purchase, that he asserted an absolute right in himself to the property. However his possession was acquired, it is clear that it was openly and avowedly adverse to the right of the plaintiff; and was a virtual and unequivocal repudiation of the trust, publicly, and within the knowledge of the plaintiff.

If the title of the plaintiff had not been divested by a legal sale under the deed of trust, he had his right of action, to be restored to the possession of the property; subject only to any

equity which may have arisen in favor of the purchaser, and to the rights appertaining to the trustee, for the purpose of exempting the trust. And he was fully aware of his rights: for he asserted them in conversation with a witness, and threatened to commence legal proceedings for the recovery of the property. If the plaintiff's title had not been divested by a sale of the property, his right of action for its recovery, was as perfect and unquestionable when it first came to the adverse possession of Waller, as it was after he had parted with the possession, or when the present action was commenced: and, from the period when the right of action accrued, the statute commenced to run. More than two years from that period had elapsed before the bringing of the suit; and the right of action, therefore, was clearly and effectually barred.

But it is insisted that the defendants by voluntarily submitting the property to sale by the trustee in 1848, and becoming the purchasers, admitted the title of the plaintiff, and are estopped from controverting it in this action.

If it be true that subjecting the property to sale, under the circumstances, operated as a relinquishment of the previously acquired title of the defendants, their subsequent purchase, it would seem, would also operate to reinvest them with the title.

But, to this it is objected, that the sale was inoperative to pass the title, because the debt, secured by the deed of trust, was, at the time, barred. It is true that the right of action was lost; but the debt was not extinguished. The money had not been paid. And I do not perceive that it is a necessary, or legitimate consequence of the right of action having become barred, that the power to sell, conferred upon the trustee by the deed of trust, would be thereby revoked, or annulled. But, whatever opinion may be entertained of that question, it is certain that the proceeds of the sale were applied in payment of the debt, which the plaintiff, though not legally, was morally bound to pay. And before a Court of equity would lend him its aid to set aside the sale, and recover back the property, it would require of him to restore to the purchaser the price.

But it may well admit of a question, whether, by subjecting the property to sale under the deed of trust, the defendants ought to be held to have relinquished their previous acquired title. It cannot be supposed that, by so doing, they intended to admit the superior title of the plaintiff. They were contesting his title in the suit then pending, and asserting a superior title in themselves, by every means in their power. And their object, in their subjecting the property to sale, doubtless was, to protect their possession and place their own title beyond dispute, by extinguishing the only adversary claim.

In every case where a defendant or one in possession, for the purpose of protecting his possession, buys in an outstanding title, derived from one who claims adversely, the purchase, and assertion of the title so acquired, is, in so far, an acknowledgment of the adversary title. But it is not such an acknowledgment as will operate a relinquishment of a previously acquired title, or as will estop the party from controverting the title of his adversary, and showing that his own was the superior and better title. A party may protect his possession, or fortify his right, by bringing in, and thus removing adverse claims, which occasion a cloud upon his title, however or by whomsoever held, without incurring the hazard of forfeiting his title, and without prejudice to his right. And the exercise of this undoubted right was, evidently, all the defendants had in view or sought to accomplish by means of the sale in question. If the title thus acquired was worthless, the having asserted it, cannot, under the circumstances, justly be held to defeat any previously acquired valid title, which the party may have had.

But it is not necessary to the decision of the case, to determine what effect subjecting the property to sale, under the circumstances, had on the rights of the defendants. There is another view of the case, which, independently of the statute of limitations, is decisive against the right of the plaintiff to a recovery.

It sufficiently appears by the evidence, that there had been a sale of the property previous to the 20th of July, 1842, and consequently, long prior to the commencement of this suit. The proceeds of the sale appear to have been credited upon the notes, which the deed of trust was given to secure, and of which the defendants became the assignees. The plaintiff, when speaking of his intention to bring suit to recover back the property, assigned as a reason that the sale had not been legally and fairly made. But whether it was so made or not, the plaintiff received the benefit of the proceeds of the sale ; and before he could maintain his action, in effect, to set aside the sale and recover back the property from the purchaser, or those claiming under him, it was incumbent on him to restore the price which had been paid for it, and reeivced to his use. It would be repugnant to the plainest principles of equity and justice to permit him, thus to set aside and annul the sale, and recover back the property, while he retained the price. To entitle the plaintiff to maintain the action, therefore, he must have refunded or offered to refund the purchase money. This he has not done ; and this, of itself, is an answer to the right of action he has asserted, leaving out of view the defence of the statute of limitations, and the several other special defences by which a recovery was resisted. In this view, the rulings of the Court, in refusing instructions asked by the plaintiff, having reference to those special defences, are immaterial. The instructions asked by the defendants cannot be considered as properly the subject of revision, for the obvious reason, that it does not appear by the record whether they were given or refused. (4 Tex. R. 8.) The plaintiff manifestly has failed to make out a right to a recovery ; and the judgment must be affirmed.

Judgment affirmed.