## JOHN N. HENDERSON v. WM. RILEY ET AL.

(No. 2655, Op. Book No. 4, p. —.)

APPEAL from Brazos County.   Opinion by WILLSON, J.

§ 483. *Costs; security for; deposit of money sufficient compliance with rule for; clerk is responsible officially for money thus deposited.* Appellees, plaintiffs in the court below, were ruled to give security for the costs of the suit. In answer to the rule, they deposited with the clerk of the court an amount of money which he considered sufficient to cover the costs. Appellant moved to dismiss the suit upon the ground that the rule had not been complied with, which motion was overruled. *Held:* Appellant contended, and still contends, that the only way to comply with the rule requiring security for the costs of a suit, is to give a bond with security, as is commonly done. We are not aware that this question has been adjudicated in this state, and we must therefore determine it without the aid of precedent. Our conclusion is that "money is the end of the law," and that a deposit with the clerk of an amount of money satisfactory to

him, or sufficient to cover the costs of the suit, is a sufficient security for costs, within the meaning of the law. It is not required by this statute, as in the case of attachments, sequestrations, injunctions, appeals, writs of error, etc., that the party shall *give bond* with security, but only that he shall give *security*. [R. S. 1435, 1436.] If it had been intended that a *bond only* could secure the costs, it would have been so expressed in the law, as in other cases when a bond is required. We are strengthened, we think, in this construction, by article 1438, Rev. Stats., which provides that it shall be a sufficient answer to the rule for the party to make affidavit that he is *too poor to pay the costs of court*, and is unable to give security therefor. It would seem from this, that if he could *pay* the costs, although he might be unable to give personal security therefor, he would be entitled to prosecute his suit without the security. In order, then, in such case, to entitle him to prosecute his suit, he must pay the costs. How pay them? In money, of course, deposited with the clerk of the court; and when this is done, what more could reasonably be required? But, it is answered, the clerk is not responsible officially for the money thus deposited. This is a mistake. Articles 1458 and 1459 of the Revised Statutes provide fully for the official responsibility of the clerk receiving the money, and for the payment over of the same to his successor in office. We are of the opinion that the court did not err in holding that appellees, by depositing money in court, had complied with the rule requiring them to give security for the costs.

§ 484. *Community administration; principles governing settlement of; defenses by surety in suit on bond of community administratrix; statement of the case.* Appellees are the children of Green Riley, deceased. who died in January, 1871. At the time of his death the only property he owned was a small rural homestead consisting of fifteen acres of land, worth $600. He left surviving him his wife and seven children, the eldest child

being then fourteen and the youngest two years of age. His family were without provisions or other means save the homestead, and in a very helpless and destitute condition, some of them sick. The surviving widow, Elizabeth Riley, filed an inventory and gave a bond, with appellant as surety thereon, to administer and account for the community property of her deceased husband and herself, which property consisted alone of the homestead. Having obtained authority to dispose of the homestead, she sold it for $600. She immediately purchased another homestead near town with $300 of this money, also a sewing machine for $75, and the remainder of the money she expended in the support of herself and children, except $60, which she paid for the services of an attorney, costs, etc., in the administration. This suit was brought by appellees, the children of Green Riley, deceased, and of Elizabeth Riley, against Elizabeth Riley and John N. Henderson, appellant, her surety, upon her administration bond, to recover one-half of the $600 received by her for the homestead, together with interest thereon. Elizabeth Riley did not answer in the suit, and judgment by default was taken against her. Appellant Henderson answered specially: 1. That Elizabeth Riley had no property of her own; that the only property of any kind which she could look to for the maintenance of. herself and seven children was the small rural homestead; that they were in a destitute and suffering condition, without food, scarce of clothing and sick, and in need of medicine and medical attention, and that it was absolutely necessary for their support that she should sell the homestead; that she sold it for its full value, $600, and used the proceeds for the support of herself and children. 2. That she immediately invested $300 of the money arising from the sale of the homestead in another homestead near town, her object being to get where she could have better opportunities of obtaining employment for herself and such of her children as were able to do any service; that she invested $75 of it in a

sewing machine, for the purpose of using the same to assist in the support of the family; that the remainder of the money was expended for food, clothing, medicine and other necessaries for the family; that the family occupied and used the new homestead for about ten years, when it had become so dilapidated and depreciated in value that it was not worth exceeding $75, for which amount she sold it, and thus the estate suffered an unavoidable loss of $225; that the sewing machine was used for the purpose for which it was purchased until it was worn out, and thus the estate suffered an unavoidable loss of $75; that the reasonable expense of managing the estate, attorney's fees, etc., was $100; that, deducting these items from the $600 received for the homestead, the sum of only $100 was left subject to the demand of the plaintiffs, without considering the amount of said money expended for food, clothing, etc.  3. That out of the proceeds, this being the only property, the law would set apart and exempt to the family provisions for one year, and that in lieu of such supplies, there being none such belonging to the estate, Elizabeth Riley used and consumed the $600 which she had received for the homestead. 4. That his co-defendant, Elizabeth Riley, is insolvent, and can suffer no injury from a judgment against her, and that she and the plaintiffs have formed a combination and conspiracy to defraud defendant by recovering of him the amount of money sued for, after having used said money to save themselves from hunger, nakedness and other sufferings.  5. That all of the plaintiffs except James and John Riley were barred of their action by the statute of limitations.  These special pleas of the defendant Henderson were all stricken out upon exceptions made thereto by plaintiffs, and judgment was rendered against Henderson for $270, together with eight per cent. interest from January 14, 1871, the date she sold the original homestead.  *Held*, we are of the opinion that the matters pleaded in the special pleas one, two and three, as above set forth, constitute an equitable defense, and

should not have been stricken out. Elizabeth Riley was a trustee of the interest of her children in the community property, and, as such, had obligated herself and her surety, Henderson, to faithfully administer the trust and pay over to the plaintiffs their interest in such property after the payment of the debts with which the whole of such property was properly chargeable. [Pas. Dig. 5494.] In the administration of this trust she could act independently of the probate court. As the law was at the time she took the estate, and up to the adoption of the Revised Statutes, there was no power expressly vested in the probate court to supervise her action, or compel her to account, though, perhaps, under the general powers conferred upon probate courts over matters pertaining to the estates of deceased persons, she might have been called to account in that court. This is a question, however, which we need not now determine, as it does not materially affect the issues involved in this case. It is clear, however, that, in the absence of any proceedings had in the probate court to control her action, she was authorized, by virtue of the express trust conferred upon her, to administer the community estate as she saw proper, being responsible upon her bond for a faithful administration of the same. If she administered the estate faithfully, that is, honestly, and with ordinary prudence and economy, preserving it as well as she was able to do from waste and loss, she performed all that was required of her by law or in equity, so far as the management or administration of the property was concerned. Then arises the question as to the extent of her liability to account for and pay over to the children their interest in the estate. Must she be held liable upon her bond to the full amount of the value of the interest of the children at the time she received that interest, subject only to a deduction of one-half the community debts existing against the estate when it came into her hands? Or, should she be credited with unavoidable losses, necessary and reasonable expenses, and the support and mainte-

nance of the children? In the statute in force when Elizabeth. Riley administered the estate, there was no provision which allowed her any credits or deductions except for moneys expended in the payment of debts with which the whole property was chargeable. [Pas. Dig. 5494.] It is contended by appellees, that, under that law, she is liable upon her bond for the full amount of one-half of the value of the community property re- ceived by her, as there were no community debts with which the property was chargeable; and that no losses which accrued to the estate, or moneys expended in sup- port of the children after the death of Green Riley, can be taken into account in her settlement with the plaint- iffs. We cannot sanction a proposition which, to our minds, is so repugnant to justice and humanity. We need no stronger illustration of the injustice and inhu- manity of such a doctrine than the case before us. Here was a weakly, sickly widow with seven small children, some of them sick, without food, without clothing, with- out medicine, in short in the most extreme destitution, requiring immediate relief, and with no means of relief except a little rural homestead, dilapidated and almost untenantable. What is she to do? She must do some- thing to save herself and children from starvation. All that she can do is to sell the homestead, and this she cannot do until she has given the bond required by law. Having sold the property, must she put the proceeds of the sale out at interest, or hoard it up for the children, while they are hungry, naked, sick and homeless? But, say appellees, she was bound, under the law, to support us,— she was our parent. As a general rule, the proposi- tion that a parent must support the child is correct, but this rule does not prevail in all cases. How could the mother in this case support the seven children? She had no means beyond the one-half interest in the little home- stead, and she was unable to support them by labor. She expended in their support the entire amount of her own interest in the community. Having done this, must she

still let them starve, and starve with them, because the law does not in express terms permit her to save their lives with their share of the community? But, say appellees, she should have obtained letters of guardianship of the estate of these minors, and then she could have lawfully expended this money under the direction and supervision of the probate court. This is all very true. There is no question but that, through the means of a guardianship, she could legally, and much more rapidly than she did, have absorbed this little property. It had already cost the estate $60 to get legal authority to sell the homestead. A guardianship would have cost as much, and probably more. Nothing then would have been saved to the plaintiffs by a guardianship, for that proceeding could only have resulted in expending the estate of the minors in their support, which was done, as alleged in defendant's pleas, prudently and faithfully by the trustee, Elizabeth Riley, without reducing the already pittance of support by the additional and, in this case, worse than useless expense of a guardianship. We are of the opinion that the several deductions claimed in the special pleas of the defendant, that is, for the depreciation in value of the homestead purchased by Elizabeth Riley, allowing its original value to be $300, the amount it cost her; for the sewing machine, $75, that being its cost, and it having become worthless by use; for money expended in the support and maintenance of plaintiffs; for costs of administration, including attorney's fees, are all credits which, upon sufficient proof, should be allowed against the claim of the plaintiffs, and that the court erred in striking out the pleas setting up these matters in defense. We think we are fully warranted in this view, not only by reason and justice, but by ample authority. Article 2173 of the Revised Statutes expressly provides that in a settlement with the children of their community interest in the estate, there shall be deducted from the whole estate all community debts, unavoidable losses, necessary and reasonable expenses, and a reasonable commission

for the management of such estate. This article, to the
extent of the deductions provided for, may well be re-
garded as a legislative construction of the statute then in
force, but which did not clearly and expressly designate
the credits proper to be allowed. And furthermore, this
provision being the law in force at the time of the trial
and institution of this suit, we think it prescribes the
rule which must govern the settlement to be made be-
tween the children and the mother, of the trust adminis-
tered by her, in so far as it is applicable to the credits
claimed by the appellant. While this article may not be
broad enough in its terms to include the money expended
in the support and maintenance of the children, when
literally construed, we think, in an extreme case like this
one, equity would come to the aid of the law, and grant
that just relief which the strict letter of the law might
be held to deny. And again, it is a well recognized and
wise maxim of the law, " *Lex fingit ubi subsistit æqui-
tas* "—" The law feigns where equity subsists." [Whart.
Leg. Max. 365, p. 252.] If this estate had been adminis-
tered in the probate court, either by administration or
guardianship, it would have been absorbed and consumed
entirely in the payment of costs and in the support and
maintenance of the family of the deceased, and the
credits and deductions claimed by appellant would doubt-
less all have been allowed as reasonable, necessary and
just. It is well settled that "any disbursements which
the court would order the trustee to make will be allowed
to the trustee, if he makes them without an order." [2
Perry on Trusts, § 915; Simpson v. Gregg, decided by
Commissioners of Appeals, at Austin, June 7, 1880; 2
Story's Eq. § 1354*a;* 2 Kent, 191.] There is no doubt but
that any court would have ordered Mrs. Riley to make
the disbursements alleged by appellant to have been
made by her, and it would not be confined to the probate
court to pass upon such disbursements, but it would be
within the jurisdiction of any court of equity before

which the question of their allowance might arise. [Hill on Trustees, 404.]

§ 485. *Combination and conspiracy to defraud.* As to the charge of combination and conspiracy between plaintiffs and appellant's co-defendant, Elizabeth Riley, we do not regard this plea as material, and yet we do not think it was an improper plea in view of the circumstances of the case. It would not alone, and of itself, be a defense to the action, but when joined with the other defenses in the case, such a combination and conspiracy as is alleged, if proven, would go far in a court of equity to weaken the claim of the plaintiffs.

§ 486. *Limitation; does not run against a trust until demand, etc.* The appellant's plea of limitation was properly disregarded. This suit was to recover a trust fund from a trustee, and the statute of limitation would not commence to run in favor of such trustee until the money had been demanded of her, and it was shown that demand was not made until shortly before the institution of this suit. [Hill on Trustees, 264; Turner v. Smith, 11 Tex. 620.]

§ 487. *Interest; not recoverable against a trustee until after demand made, etc.* Appellees were not entitled to recover interest until after demand made of the trustee for their portion of the estate, and the court erred in rendering judgment in their favor for interest from the date when Elizabeth Riley sold the homestead.

June 9, 1883.                    Reversed and remanded.