FREDERICK S. WARD, ADMINISTRATOR, *vs.* FREDERICK IVES ET AL.

Third Judicial District, New Haven, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A tenancy by the curtesy does not exist in land in which the wife had only an estate in reversion, expectant upon a freehold estate in another which did not terminate during coverture.

The postponement of a distribution of real estate does not alter the course of descent. When made, the distribution relates back to the death of the intestate, and simply turns an estate in cotenancy into an estate in severalty.

It is the duty of the Court of Probate, before accepting and thereby giving effect to a distribution, to ascertain who the heirs or distributees are. Its acceptance of the return, however, imports a finding that the distributees therein named are those legally entitled to receive the property.

A distribution of intestate property formerly owned by *A*, instead of being made to the respective estates of *A's* children who, after his decease, had themselves died intestate, and thence to their children, which would have been the legal method, was made, in 1886, directly to the grandchildren *per stirpes*. In the allotment certain real estate set to *S*, one of the distributees, was in terms made subject to a life interest in her father as tenant by the curtesy, although it was not legally chargeable with that burden. The report of the distributors was accepted and no appeal taken, and for more than twelve years all parties acquiesced in, claimed title, and held possession under, the distribution as made. *S* died in 1898 unmarried and intestate. *Held* that whether the Court of Probate had juris-

diction thus to incumber the realty or not, was immaterial, inasmuch as its decree, taken in connection with the conduct of all parties in interest, might fairly be treated as carrying into effect a family arrangement, to which *S*, after becoming of age, elected to conform; and therefore her administrator was justified in inventorying the real estate set to her as subject to the life estate in her father, and in settling his administration account upon that basis.

Argued January 23d—decided April 22d, 1903.

APPEAL by the administrator of the estate of Mabel I. Stevens, deceased, from a decree of the Court of Probate for the district of New Haven, disapproving a final administration account; taken to the Superior Court for New Haven County, by which (*Thayer, J.*) the decree of the Court of Probate was confirmed, and appeal by the administrator. *Error.*

*Samuel Fessenden* and *Seymour C. Loomis*, for the appellant (plaintiff).

*Henry C. White* and *John Q. Tilson*, for the appellees (defendants).

BALDWIN, J. The appellant's intestate was the only surviving child of Ellen M. Stevens, deceased, who was the wife of Samuel A. Stevens and one of the three surviving children of Henry Ives of New Haven. Henry Ives died intestate in 1859, owning several parcels of real estate. In an undivided two fifths of one of these—a house and lot on Wall Street in New Haven—dower was assigned to his widow, and the other three fifths, under a partial distribution of his estate, became the absolute property of Ellen M. Stevens in 1864. The widow and her daughter (with the husband of the latter, to whom she was married when her father died) resided together in the house until the death of Mrs. Stevens, intestate, in 1881. One of the sons of Henry Ives died unmarried and without issue, in 1871; the other, Frederick Ives, died intestate, leaving a widow and children, in 1883. In 1886, the widow of Henry Ives died, and distributors were appointed by the Court of Probate for the district of New

Haven to distribute what of his estate had not been previously distributed, including the proceeds of certain land sold after his death, by the widow and heirs, for $9,278.67.

They set to Mabel I. Stevens, described as "a daughter of Ellen M. Stevens, deceased, and a granddaughter of said Henry Ives, deceased," two undivided fifths of the Wall Street real estate, at their appraisal of $7,200, and $5,539.34 of the proceeds of the lands so sold, amounting to $12,739.34 "set to Mabel Ives Stevens, subject to the life interest therein of Samuel A. Stevens, husband of said Ellen M. Stevens, as tenant by the curtesy." To Susan J. Ives, the widow of Frederick Ives, there was set absolutely a third of the balance of the proceeds of the lands sold, and the other two thirds was divided among and set to his children, together with a parcel of real estate on East Street at an appraisal of $9,000, in which each received an undivided interest, "subject to the dower interest therein of said Susan J. Ives."

The return of this distribution was accepted in 1886 by the Court of Probate, and no appeal was ever taken from the decree of acceptance. Mabel I. Stevens was then a child of thirteen. She lived with her father, Samuel A. Stevens, in the Wall Street house until 1898, when she died unmarried and intestate. Prior to that time, a brick block had been erected, at the expense of Mabel I. Stevens, on a part of the Wall Street lot not occupied by the original house. The appellant's administration account did not charge him with any of the rents and profits received from this block, and the decree of probate, which is the subject of the present proceeding, ordered him to change the account so as to charge himself with two fifths of such rents and profits from the date of the death of Mabel I. Stevens. All the rents and profits had been collected, ever since the block was erected, by Samuel A. Stevens, and appropriated to his own use, under a claim of right as tenant by the curtesy; and as to three fifths of them it is conceded that this claim is a proper one.

A tenancy by the curtesy does not exist in lands in which the wife had only an estate in remainder, expectant upon a life estate created for the benefit of another, which did not

terminate during coverture. *Todd* v. *Oviatt*, 58 Conn. 174. Dower is an estate favored by the law, and may exist in equitable remainders. *Greene* v. *Huntington*, 73 Conn. 106, 113. Estates by the curtesy are not favored. *Todd* v. *Oviatt*, 58 Conn. 174, 191. The considerations which exclude it in case of a remainder expectant upon an undetermined freehold estate, apply equally to the case of a reversion. The seisin of Mrs. Stevens, when occupying the Wall Street property together with her mother, was only such as attached to her own undivided three fifths; of the two fifths now in question the seisin was in the dowress. The tenancy by the curtesy, therefore, of Mr. Stevens, extended by law only to the undivided three fifths of the Wall Street property to which his wife had an absolute title.

It does not, however, follow that he was accountable to this appellant for the rents and profits which he had collected from the tenants of the remaining two fifths.

The paper title of the appellant's intestate to that two fifths is derived from the distribution of part of her grandfather's estate in 1886. The estate so distributed, or that in which it originally consisted, had, upon his decease, descended to his heirs at law as tenants in common, subject to his widow's claim of dower. It might have been distributed among them in severalty immediately upon the assignment of dower. *Webster* v. *Merriam*, 9 Conn. 225. The postponement of a distribution of the real estate until the decease of the dowress did not alter the course of descent. The distribution, whenever made, would relate back to the death of the testator; simply turning an estate in cotenancy into an estate in severalty. All the heirs had died prior to the distribution now in question. The share which would otherwise have come to each, therefore, belonged to his estate, and should have been distributed to his estate. *Kingsbury* v. *Scovill*, 26 Conn. 349; *Holcomb* v. *Sherwood*, 29 id. 418; *Greathead's Appeal*, 42 id. 374; *Hewitt's Appeal*, 53 id. 24, 37; *Dickinson's Appeal*, 54 id. 224; *Hale's Appeal*, 69 id. 611, 616. This would have involved expense and delay. It would have given rise to several questions of conflicting right. One

was as to the proper division of the proceeds of the land sold, and the dower right, if any, of the widow of Frederick Ives. Another was as to the claim set up by Samuel A. Stevens, to a tenancy by the curtesy in whatever land had descended to his deceased wife. Under these circumstances all the parties interested, or claiming to be interested, in the undistributed estate formerly belonging to Henry Ives (or those assuming to represent them), apparently concurred in the endeavor to have their respective rights settled and determined by probate proceedings in the form of a distribution of it. The result of this family arrangement was the appointment of distributors, and their return as made and accepted.

By this return the share which would have been set in fee to Ellen M. Stevens, the daughter of Henry Ives, had she been living, was set in fee to Mabel I. Stevens, her sole heir at law. It was the statutory duty of the Court of Probate, before accepting it, to ascertain who were the heirs of Henry Ives, and entitled to receive the estate to be distributed. *Mack's Appeal*, 71 Conn. 122, 128. Its acceptance imported a judicial finding that Mabel I. Stevens was one of them, and this was conclusive as to that point upon all parties in interest, unless the decree should be set aside on appeal. *Kellogg* v. *Johnson*, 38 Conn. 269. It had a similar effect as settling the right of the widow and children of Frederick Ives to receive what would have been set to him, had he been living.

The distributors not only set the inheritance of Ellen M. Stevens to her daughter, but set it " subject to the life interest therein of Samuel A. Stevens, husband of said Ellen M. Stevens, as tenant by the curtesy." This treated the estate distributed as subject to a burden to which it was not legally subject. Presumably the appraisal at which the estate was set to her was reduced to the extent of the supposed incumbrance, for the whole estate to be distributed was appraised in connection with and for the purposes of the distribution, and it was the evident intent of the distributors to divide it into halves, between the two stocks of descent which had survived to the second generation.

There is no occasion to inquire whether the Court of Probate had by law jurisdiction thus to incumber the Wall Street property when set to the appellant's intestate. Having done what all the parties then before it asked it to do or acquiesced in its doing, its decree, never having been appealed from, is conclusive upon them and their privies, among whom are the appellees in the present case, who objected to the allowance of the appellant's administration account. *Gates* v. *Treat*, 17 Conn. 388. It is true that Mabel I. Stevens at the date of the distribution was a child, and presumably was represented by her father and natural guardian, whose personal interest was adverse to hers. She came of age, however, in 1894, and lived until 1898. During the entire twelve years between 1886 and 1898, the distribution stood absolutely unquestioned, and by her conduct after coming of age she sufficiently manifested her assent to the family arrangement resulting in the distribution.

Each of the parties named in the distribution as beneficially entitled, including Samuel A. Stevens, has taken and held possession under it, and according to its terms. Mabel I. Stevens lived during her whole life upon the land in question. She never, so far as appears, made any demand upon her father for an account of the rents and profits, although her money had been used to increase them. She never appealed from the decree accepting the return of distribution. She never asked a court of equity to remove what, at least, was a serious cloud upon her title. Both she and the appellees, or those to whom the appellees stand in privity, have received and enjoyed all that the distribution purported to give them. The appellees can claim no right which she has waived. *Brown* v. *Wheeler*, 17 Conn. 345, 350. She had no title in severalty to the two-fifths interest in the Wall Street land except under this distribution. The appellees are relying upon her several title. If not a good title, by reason of the conclusiveness of the decree which gave it to her, it is under what was substantially a family agreement, to which she elected to conform. Pomeroy's Equity Jurisp., § 850. If she, claiming under this decree, was not bound to do as

she did and accept it in its entirety, she was bound to take steps within a reasonable time to set it aside or correct it. The time within which she could appeal expired in November, 1895. Public Acts of 1885, p. 475. The appellant filed an inventory of her estate in October, 1898, shortly after her decease, in which the Wall Street property was appraised at a sum reached by deducting from its value that of a life estate in Samuel A. Stevens. So far as appears, up to that date no action for equitable relief against her father's claim to such an estate in the whole of the property had ever been instituted by her or by her heirs or representatives; nor had any such action been instituted, when the Court of Probate, more than three years afterwards, passed the decree appealed from. She had had a full opportunity, after coming of age, to elect whether to claim title to the premises under her mother, by proper proceedings in the settlement of her mother's estate, or under her grandfather, by the distribution of 1886. In the inventory of her mother's estate, which had been filed in the Court of Probate in 1881, there was no mention of any reversionary interest in two fifths of the Wall Street property. Mabel I. Stevens in 1894 could have had it inventoried. She took no steps in that direction. She manifested her election to abide by the distribution of her grandfather's estate by her silence and inaction throughout nearly four years which elapsed between her majority and her death. Regarded as a family settlement, it could not bind her with respect to its reference to the tenancy by the curtesy, except by her express or implied consent, but with that it could. Her conduct manifested an election to give such consent, and thus secure the benefits which the distribution purported to confer upon her. Her administrator properly recognized the position which she had thus taken, by inventorying the property as subject to a life estate in her father, and his administration account must be settled on that basis.

There is error; the judgment of the Superior Court is set aside, and the cause remanded with directions to reverse the decree of the Court of Probate.

In this opinion the other judges concurred.