GEORGE L. GERARD *vs.* E. LOUISE BEECHER ET ALS.

Third Judicial District, Bridgeport, October Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A complaint in an action to quiet and settle the title to real estate is demurrable, notwithstanding its assertion of ownership or title in the plaintiff, if such claim appears from the allegations of fact to be unwarranted.

A devise to A for life with remainder to A's heirs in fee, was void as to the remainder, under the statute against perpetuities which existed in 1872.

The object of a distribution is the division of the estate among those who are entitled to it upon the death of its former owner. The distribution operates *in presenti*, is governed by conditions existing at the decedent's death, and deals only with definite, ascertained persons.

A distribution of real estate to "the heirs" of a living person is of no effect, because of the impossibility of determining who the heirs are; and this impossibility is the same, whether such distribution be regarded as one made pursuant to a devise which is void as contravening the statute against perpetuities, or as a distribution, as intestate estate, of land which formed the subject-matter of the illegal devise.

No understanding or agreement of the parties that such a division would carry out the decedent's intent and do justice between the beneficiaries, can give the distribution any legal vitality or effect.

Unless a plaintiff has been induced by the acts or conduct of another to do or to forbear from doing something which furnishes the basis for an estoppel, he is in no position to invoke that equitable doctrine.

If it be conceded that one person may assert an estoppel for the benefit of another, the latter must certainly be a definite, ascertainable individual, otherwise the benefit cannot accrue or be bestowed.

In the present case a testatrix who died in 1871 gave an undivided one-fourth interest in certain real estate to her niece *A*, who still survives, for her life, with remainder to *A's* "heirs" in fee; and a distribution was made accordingly. *Held* that the gift in remainder was void, being in violation of the then existing statute against perpetuities; that the property, subject to *A's* life estate, passed as intestate estate to the decedent's sister, who was her sole heir at law but died before the date of the distribution; and that the plaintiff, a son of *A*, took nothing, either under the distribution made to *A's* "heirs," or by way of an alleged estoppel, or by both.

Argued October 23d, 1907—decided January 8th, 1908.

ACTION under § 4053 of the General Statutes, to quiet and settle the title to real estate, and for other incidental relief, brought to the Superior Court in New Haven County, where demurrers to the complaint and to a cross-complaint filed by certain of the defendants were sustained and judgment rendered (*Robinson, J.*) in favor of the demurrants, from which the plaintiff and the other defendants appealed. *No error.*

The following facts are set out at length in the complaint: In 1871 Mrs. Sarah L. Maltby died, leaving an estate which embraced considerable New Haven real estate inherited from her father, a will, and a sister, a Mrs. Garfield, who was her only heir. Mrs. Garfield at that time had three children, to wit: Nathaniel and John Garfield, and Eunice Louise Beecher, the plaintiff's mother. Another daughter of Mrs. Garfield had died, leaving the defendant Josephine L. Hazleton Hill as her only child. Mrs. Garfield survived Mrs. Maltby only a short time and died before the settlement of the latter's estate, leaving the four persons named as the former's sole heirs. Mrs. Beecher, Mrs. Hill and Nathaniel Garfield are now living

Gerard v. Beecher.

and are made defendants. John Garfield has died, leaving a widow and two sons as his only heirs, to wit: the defendants Frankie S. Garfield, Umberto Dante Garfield, and James A. Lyon Garfield. Mrs. Hill has four children who, with her, are defendants. The plaintiff is the only child of Mrs. Beecher. Mrs. Maltby by her will gave one-fourth part of all the real estate inherited by her from her father, and including Nos. 780 and 782 Chapel Street in New Haven, to Nathaniel Garfield, and one-fourth to John. Another fourth was given in trust for Mrs. Beecher during her natural life and " then and after her decease . . . to her lawful heirs forever." The remaining fourth was in like manner given in trust for Mrs. Hill during her natural life, and " then and after her decease " to her " heirs forever." The estate was finally settled in May, 1872, when distributors were appointed and a distribution returned. By this distribution there was set to Nathaniel Garfield certain real estate as representing one quarter of Mrs. Maltby's said real estate derived from her father, to John an undivided half interest in No. 782 Chapel Street and other real estate as also representing another quarter, to Henry White in trust for Mrs. Beecher during her life and after her decease to her heirs, No. 780 Chapel Street as being another quarter, and to said White in trust for Mrs. Hill during her life and at her decease to her heirs, an undivided half interest with John in No. 782 Chapel Street and other real estate as being the remaining quarter. At the time of this distribution Mrs. Hill had minor children living, and it was the wish and intention of Mrs. Maltby that Mrs. Hill's children should take the remainder in the property in which the life use was given to Mrs. Hill. At that time the plaintiff was about thirty years of age and the only child of Mrs. Beecher, and it was Mrs. Maltby's wish and intention that he should receive the remainder in the property in which the life use was given to his mother. The distribution was made as it was for the purpose of carrying out Mrs. Maltby's wishes. Nathaniel, John, Mrs. Beecher and Mrs. Hill, were all of full

age when the distribution was made, and understood and
intended that the plaintiff should receive and did receive
the fee in No. 780 Chapel Street subject to the life use of
his mother, and that the children of Mrs. Hill should re-
ceive the fee in the undivided one half of No. 782 Chapel
Street, subject to the life use of their mother. Following
the distribution, Mrs. Beecher entered upon the enjoyment
of her life estate in No. 780 under the claim and in the be-
lief that the plaintiff was the owner of the fee, and has
erected a building thereon at a cost of $25,000. Mrs. Hill
in like manner entered upon the enjoyment of the prop-
erty set out for her life use, under a claim that the title
thereto, subject to her life estate, was in her children, and
has expended about $8,000 in permanent improvements
thereon. No appeal has ever been taken from the order of
distribution, and all parties have since, until 1905, acqui-
esced in the distribution, under the claims of the parties
made thereto, and have not objected to the improvements
and expenditures therefor made by either Mrs. Beecher or
Mrs. Hill. The estate of John Garfield has been settled
and distributed, and no claim was in the process thereof
made to any interest in said John in No. 780 Chapel Street,
or to any other interest in No. 782 than that set out
to him in said distribution, nor was such interest invento-
ried as a part of his estate. No member of his family has
appeared, and Umberto has released to the plaintiff any
interest he may have in No. 780. In 1901 the defendants
Maria E. Ives, as administratrix of the estate of Charles
Ives, and individually, and Kate Ives Waldo, filed a judg-
ment-lien upon Nos. 780 and 782 Chapel Street against
Mrs. Beecher, and have since foreclosed the same, the
judgment becoming absolute in November, 1903. Under
this judgment these defendants, hereinafter called the Ives
defendants, took possession of No. 780, and the rents and
profits thereof have since been appropriated by them. The
other defendants claim, or may claim, an interest in said
premises adverse to the plaintiff.

The plaintiff asked that the Ives defendants account for

the rents and profits received by them, that upon such accounting and the payment by the plaintiffs to said defendants of what should remain due upon said judgment, said defendants be required to release to the plaintiff all rights claimed by them by virtue of said lien and foreclosure; that each of the other defendants in his or her answer state whether or not he or she claims any estate or interest in, or encumbrance upon, the property No. 780 Chapel Street, and if so, set out the nature and extent of such claimed estate, interest, or encumbrance, and the manner in which and sources from which the same is claimed to have been derived, and that a judgment be rendered quieting and settling the title to said property and adjudging that the plaintiff is the owner thereof in fee simple, subject to the life estate of Mrs. Beecher, his mother.

To this complaint Nathaniel Garfield and the Ives defendants demurred. The defendants Hill disclaimed all interest in said premises No. 780, and presented a cross-complaint in which, upon the facts alleged in the complaint (admitted to be true) and the additional allegations that said distribution was the result of a family agreement between the only heirs of Mrs. Maltby's sole heir, to which all the parties thereto elected to and did conform, and that said judgment lien was a cloud upon their title to No. 782, it was asked, as against the Ives defendants, that said lien be declared void as to said No. 782, or if not, that an accounting be made by said defendants and the right of redemption given, and, as against the other defendants, that the same relief be given to the cross-complainants in respect to No. 782 as was asked by the plaintiff in respect No. 780.

The plaintiff replied, admitting the allegations of the cross-complaint. Nathaniel Garfield and the Ives defendants demurred to it, averring that it was not germane to the issues presented by the complaint, and insufficient. The Ives demurrers contained reasons of demurrer not found in that of Nathaniel Garfield, which related to the prayers of relief especially addressed to them.

The court sustained all the demurrers, and thereafter, the parties having failed to amend, rendered judgment dismissing both the complaint and cross-complaint.

*William B. Stoddard*, for the appellant (plaintiff).

*Edward H. Rogers*, for George A. Hill *et als.*, appellants.

*Henry G. Newton* and *Harrison Hewitt*, for Marie E. Ives Humphrey *et als.*, appellees.

*E. P. Arvine*, for Nathaniel L. Garfield, appellee.

PRENTICE, J.   The plaintiff's claim to a vested title to, or interest in, the property described in the complaint and known as No. 780 Chapel Street, is the foundation of the claim for relief presented by him in the complaint.   In like manner the claim of the defendants, the Hill children, to a vested title to, or interest in, the property known as No. 782 Chapel Street, underlies the claim for redress presented by the defendants Hill in their cross-complaint. If the facts set up by them respectively disclose that these claims are unwarranted, the action of the court below in sustaining the demurrers to the complaint and cross-complaint was not erroneous.   *Roberts* v. *Merwin, ante*, p. 347, 68 Atl. 377.

The source of whatsoever title or interest the plaintiff or the Hill children may have is Sarah L. Maltby, who at her death owned both properties in question; the character of the estate or interest claimed is the same in each case, to wit, the fee, subject to an outstanding life estate for the lives of their respective mothers; and the facts and circumstances affecting the two claims are in all respects the same.   We may, therefore, for convenience sake, confine our inquiry to the plaintiff's claim of title to No. 780.

If he has any title to or interest in that property it must be by force of either (1) Mrs. Maltby's will and the

distribution made, considered as one under the will, (2) the distribution made, considered as one independent of the will and as of intestate estate in so far as it purported to distribute what the will had been ineffective to devise, or (3) of certain facts and circumstances, of which the distribution is one, all together creating, as in *Ward* v. *Ives*, 75 Conn. 598, 54 Atl. 730, a property status which cannot now be disturbed.

It is not now contended that the statute against perpetuities, which was in force at Mrs. Maltby's death, admits of a claim that the plaintiff took anything under her will, or under any distribution made pursuant to its terms. *Gerard* v. *Ives*, 78 Conn. 485, 489, 62 Atl. 607.

In the case cited we held that the distribution of Mrs. Maltby's estate was one under her will. It is now, however, earnestly urged upon us that in so far as that instrument undertook to deal with what, by reason of the statute against perpetuities, was not effectively devised, it should be regarded as one of intestate estate, and that when so viewed its effect, since it was never appealed from, must now be to conclude the parties. An acceptance of the stated premise of this proposition, however, would not avail the plaintiff. The portions of the distribution thus carved out to form a distribution of intestate estate are two, each setting out a remainder over, after a life estate in one quarter of a defined portion of the decedent's estate, to the heirs of the life tenant. The properties in which these remainders were thus attempted to be created included No. 780 Chapel Street, of which the plaintiff's mother was made the life tenant, and an undivided one half of No. 782, of which Mrs. Hill became the life tenant. Both life tenants were of course alive, and for that matter they have survived to this day. We are thus confronted with the proposition that distributions of intestate estate, made before the repeal of the statute against perpetuities, in which estate was set out to the heirs of living persons, were good and valid. It is urged that such was the case, since the statute in terms limited its application to estates given by

deed or will. The difficulties which the proposition has to encounter are, however, not alone those of the statute, but others quite apart from it. A distribution of intestate estate is a part of the machinery of the law whereby those who under the law are entitled to share in the estate, and the particular quantum and portion each is to receive as representing his or her share, are ascertained, determined and set out. The object of the distribution is the division of the estate to those who were entitled to it upon the death of the decedent. *Ward* v. *Ives*, 75 Conn. 598, 601, 54 Atl. 730. It operates *in presenti*, is governed by conditions existing at the testator's death, and deals only with definite, ascertainable and ascertained persons. The definite ascertainment by the Court of Probate of the persons entitled to share in it is a condition precedent to a distribution of intestate estate, and the law recognizes none which is not made, pursuant to such ascertainment, to persons in existence at the death of the decedent, capable of taking and sufficiently described, save, of course, as the death of one who would otherwise be entitled to share permits the substitution for him of his estate.

No language of this distribution, descriptive of any person to whom property or estate was set out, designates the plaintiff as one. His claim rests solely upon the employment in the distribution of the phrase "her heirs," referable to his mother, as descriptive of the distributees of a remainder after her death. But he was not her heir. *Nemo est haeres viventis.* At the time Mrs. Maltby died, and also when the distribution was made, he may have entertained an expectation, increasing as the years have passed, of outliving her and becoming her heir, but he did not then occupy, and never has occupied, any other position than that of expectancy. But it is said that "her heirs" was a term used as descriptive of a class, of which he was at the time one, ready to take and capable of taking. The only possible classes of which he would surely be a member, were that of the children of Mrs. Beecher generally, her children living at Mrs. Maltby's death, and Mrs.

Beecher's heirs determined as of the time of Mrs. Maltby's decease.   Of all these classes he would have been the sole member.   The reasons why a construction creating either of them cannot be justified are sufficiently indicated in *Gerard* v. *Ives*, 78 Conn. 485, 62 Atl. 607.

These suggestions have an additional interest as bearing upon the construction to be given to the distribution in so far as it touches intestate estate, and upon the determination of its character in those portions of it as being, on the one hand, one under the will, or on the other, one in intestacy.   A construction which would impute to the Court of Probate and distributors grave irregularity is not one to be lightly accepted, and yet the one claimed for this distribution is one which sets out all of the intestate estate to two classes of undetermined and undeterminable persons—to classes which it is said should open to admit persons not in existence.   Under this construction there is neither the ascertainment of distributees, nor that of the specific distributive shares set out to each, and there is no distribution to persons in being at the death of the testatrix and capable of taking.

The distribution, therefore, as and of itself, was not sufficient to give to the plaintiff any part of Mrs. Maltby's estate, and the absence of an appeal could not alone give it added effect.

The claim that the plaintiff, failing in his endeavor to establish a vested title or interest in No. 780 through the sole operation of the so-called distribution in intestacy, can at least succeed in doing so by bringing to its aid the facts and circumstances surrounding and succeeding it, had a careful consideration in the light of all the facts now presented in the case of *Gerard* v. *Ives*, 78 Conn. 485, 62 Atl. 607, and with an adverse result.   It is, however, again urgently pressed upon us.   The reasons then assigned for the conclusion reached were so recently stated that they need not be here repeated.   They were not, however, by any means exhaustive, and were not intended to be.   In view of the insistence of counsel in the correctness of their

contentions, we are prompted to make a single additional general observation, which serves to emphasize the correctness of the former conclusion.

There is nothing in the facts and circumstances appealed to, which are claimed to be, or could be, creative of any rights or condition other than such as the distribution unsuccessfully attempted to create. The only consequence claimed for them is the giving of legal effectiveness to the distribution in so far as it of itself had none, and causing it in those portions to speak with the binding force of a valid distribution in intestacy. The distribution, and that alone, is the thing which it is sought to make operative by having breathed into it the breath of legal life. The statements of the briefs of counsel representing the interests of the plaintiff are emphatic to this effect, as where it is said that there is no attempt to vary the return of the distributors, but that it is on the contrary insisted that the distribution should stand. This being so, it follows from the form and phraseology in which the distribution appears that the plaintiff has taken upon himself a double burden, to wit: first, that of giving legal efficiency to the distribution of the remainders, and second, that of identifying himself with it as the designated beneficiary of the remainder in No. 780.

In respect to the establishment of the terms of the distribution as binding upon the parties, reliance is placed upon certain agreements which it is said that the facts and circumstances involve or imply, and certain estoppels which it is said result therefrom. In so far as agreements are concerned, it is clear that parties could not by any manner of agreement or combination of agreements succeed in securing property to the heirs of living persons, in evasion of the statute against perpetuities. As far as estoppels, which are the plaintiff's main reliance, are concerned, there is the incidental difficulty in this case that the plaintiff has not been induced by the conduct of any other person, to do or forbear doing anything to furnish the foundation of an estoppel; as also the major difficulty, quite apart

from the statute, that the creation of estoppels involves the existence of persons competent to act, to be influenced to action or nonaction, and to be benefited or harmed thereby. If, however, it be said, as it is in effect in the present case, and be conceded, that one person, as for example, Mrs. Beecher, may assert an estoppel for the benefit of another, then that other must certainly be a definite ascertainable person, or the benefit cannot accrue or be bestowed.

So it is that the plaintiff, in order to succeed in making the distribution effective in his favor, by the assertion for himself, or in obtaining from his mother the benefit of any agreement or agreements, estoppel or estoppels arising out of the state of facts here, must needs, the statute aside, identify himself as "the heirs" of his mother in the distribution as written. He must make it appear that he is the very man to whom, in legal effect, the distribution of the remainder in No. 780 was made, the very man for whose benefit any agreements as to that remainder were entered into, the very man to whose benefit any estoppel accrued. He must, in other words, succeed in writing himself into the distribution as made, as the person legally intended as his mother's heirs, and in substituting himself in the place of the parties so described in all that transpired. Until he shall have accomplished this task he cannot have acquired a *locus. standi*, and every argument he may undertake to advance in his behalf, whatever form it may take, will be doomed to inevitable failure. The task, as we have already seen, is for him an impossible one. It is impossible, first of all, because it involves an escape from the prohibitions of the statute as they have been interpreted, which, however unfortunate they may have been, were too sweeping to afford him a means of escape which would not meet other insurmountable obstacles. In *Ward* v. *Ives*, 75 Conn. 598, 54 Atl. 730, Mr. Stevens had no such condition to encounter, and therein is found a vital difference between that case and the present, the importance of which the plaintiff and the cross-complainants alike appear not to appreciate.

Certain of the defendants demurred to the cross-complaint of the defendants Hill, upon the ground that the controversy therein sought to be presented for determination was not germane to the matters presented by the complaint. We are not unappreciative of the force of the claim thus made ; but as the same considerations which lead to the dismissal of the complaint disclose that the prayers of the cross-complaint must be denied, and the parties are before the court, we have thought it best to apply the inevitable conclusion to the final disposition of the matters involved in the cross-complaint, without stopping to inquire whether there were not also technical grounds for its dismissal.

There is no error.

In this opinion the other judges concurred.