MILES L. CUMMINGS, EXECUTOR, (ESTATE OF MINNIE
I. CUMMINGS) *vs.* JEANNETTE E. WEAVER ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued November 5th, 1931—decided February 16th, 1932.

*George W. Crawford,* with whom was *Curtiss K. Thompson,* for the appellant (plaintiff).

*Philip Pond,* with whom, on the brief, was *Joseph B. Morse,* for the appellees (defendants).

BANKS, J. The original plaintiff, Miles L. Cummings, died during the pendency of the action and Curtiss K. Thompson, administrator upon his estate, was substituted as party plaintiff. This is an action brought by the representative of one of the devisees under the will of Edward E. Bristol, who died a resi-

dent of New Haven, January 9th, 1900, to recover from the heirs of another devisee certain rentals which it is claimed the latter received from the property of the estate, pending its settlement, beyond the amounts to which they were legally entitled. Edward E. Bristol left surviving him three children, Elias, Minnie and Iva. In his will he left certain real estate in New Haven to each child for life, with remainder to the testator's heirs at law, and certain real estate in Cheshire and Hamden to his brother for life. He left all the residue of his estate to his three children in equal shares, and made them joint executors of his will. Under the will Elias received the life use of properties known as 17 Wall Street and 157-161 Crown Street, Minnie and Iva the life use of 145-151 Court Street and 17 Clark Street, equally, Minnie the life use of 21 Wall Street, and Iva the life use of 19 Wall Street. Prior to his death Edward E. Bristol had given certain deeds of the properties to his children, and after his death there arose among them a long dispute over the construction of the will and these deeds as affecting their respective interests in the property. As a result of the dispute the children entered into a mutual agreement that each was to collect the rents and income of the particular properties in which he or she was given a life estate, and this was done. All three of the children died within a period of a little over two years after their father's death. Iva died, intestate and unmarried, in February, 1901. Elias died intestate in June, 1901, leaving a widow, now Jeannette E. Weaver, and a daughter Frances, the defendants herein. Minnie, who had married Miles L. Cummings, died April 4th, 1902, leaving no children. Her husband, the original plaintiff in this action, was life tenant under her will and executor of the will. Albert H. Barclay was appointed administrator upon

the estate of Elias, and made claim that that estate owned half of all these properties. The parties had opinions from many different lawyers as to the construction of the will and the deeds. The claim of Barclay was disputed, and the claim was made that Frances was entitled to all the properties. Upon his appointment as administrator upon the estate of Elias, Barclay assumed possession of the Crown Street property and of numbers 17 and 19 Wall Street, and collected the rents therefrom and after the death of Minnie accounted to Cummings, as executor and life tenant, for a portion of them, but what portion did not appear. After the death of Minnie, Cummings, as her executor and life tenant, took possession of the Court Street and Clark Street properties and collected the rents. In compliance, however, with Barclay's claim that half of the income of all these properties belonged to the estate of Elias, Cummings accounted to him for one quarter of these rentals, turned over one half to Mrs. Weaver for the use of herself and daughter, and retained one quarter for himself, as life tenant. He also told Mrs. Weaver that she should take over 21 Wall Street, as it belonged to her daughter Frances, and thereafter she collected the rents from 21 Wall Street as guardian for her daughter, from March 9th, 1902, until the sale of the property on December 7th, 1920. Barclay was appointed administrator *d.b.n.c.t.a.* upon the estate of Edward E. Bristol in December, 1918, and thereafter all the parties in interest agreed that distributors should be appointed who should make distribution of the estate, and that the properties should then be sold. This was done, and one third of the real estate of the estate was distributed to the estates of Elias, Minnie and Iva, respectively, and thereafter the estate of Iva was distributed equally between the estates of Elias and Min-

nie, resulting in each of the last two estates receiving an undivided half interest in all these properties. The plaintiff claims that the defendants received from the income of 21 Wall Street and of the Court and Clark Street properties a larger proportion than they were entitled to receive in accordance with their interest in these properties as determined by the distribution, and asks for an accounting for one half of the net income from 21 Wall Street and for the recovery of overpayments claimed to have been made by him to them from the rents of the Court and Clark Street properties.

Though it appears from the finding that the defendants received the entire rentals of 21 Wall Street during the period in question, and more than one half of the rentals of the Court and Clark Street properties, it does not appear that they received more than the one half of the net income of all these properties which would be the amount they would be entitled to receive in accordance with their interests as determined by the distribution. The values of the different properties are not stated in the finding, and it is found that it did not appear what portion of the rentals of the Crown Street property and of 17 and 19 Wall Street collected by Barclay, administrator, were accounted for by him to Cummings, executor. The finding that the accounting by Cummings of the net income of the Court and Clark Street properties—one quarter to Barclay, administrator, and one half to Jeannette Weaver, thus apportioning three quarters of the net income of these properties to those representing the estate of Elias, and one quarter to the estate of Minnie—was in compliance with the claim of Barclay that half of all the properties belonged to the estate of Elias, would seem to indicate that the equal division of the income of all the properties between the

two estates claimed by Barclay was thereby effected, when taken in connection with the collection of all .the rents of 21 Wall Street by Mrs. Weaver, and the accounting by Barclay to Cummings for the rentals of the Crown Street property and 17 and 19 Wall Street. The finding is not definite upon this point, but upon the facts found it does not appear that the defendants received any amount of income from these properties beyond that to which they would be entitled if their ownership was as determined by the distribution. The trial court, however, apparently upon the assumption that the rentals received by the defendants were in excess of the sums which the distributions indicated they were entitled to receive, held that, nevertheless, the plaintiff was not now entitled to recover such payments, since they were made or permitted voluntarily, in accordance with a family arrangement or agreement, in which the members of the family settled and compromised their respective claims to the income from these properties.

The plaintiff seeks to have added to the finding certain paragraphs of his draft-finding which he claims are essential to an adequate presentation of his claims. They contain no undisputed or admitted facts which, if incorporated in the finding, could materially affect the result.

The arrangement entered into by the three children, after the death of their father, for the collection of the rents, was one which provided for the collection by each of the rentals of those properties the life use of which he or she received under the will of their father. They were joint executors of his will, and this was a quite natural arrangement to be made by a brother and two sisters who were both life tenants and executors. This arrangement did not last long owing to the death of all three children in quick succession,

within a little more than two years after the death of their father. Questions then arose as to rights of the respective estates in the rentals of these properties and in the properties themselves, which were obviously different from and more complicated than, those existing during the lifetime of the three children. The will divided the residuary estate equally among the three children, but we cannot agree with counsel for the plaintiff that a construction of the will giving the estate of each child an equal undivided interest in these particular properties was obviously the correct one. Each child received a life estate in certain of these properties, but upon the termination of that estate the remainder went, not into the residue of the estate, but to the heirs at law of the testator. This action does not involve the construction of this will, but it may fairly be said that the will presents questions of construction as to which opinions might differ, and that at least it might plausibly have been claimed that, after the termination of the three life estates in these various properties, the will did not vest in the estate of each of the life tenants an equal undivided interest in each one of the properties. Taking further into consideration the existence of certain deeds of these properties given to his children by Edward E. Bristol during his lifetime, which, so far as we are advised by the record, constitute an unknown quantity in the problem, it is not perhaps strange that the parties received from eminent counsel differing opinions as to their respective rights under the will and the deeds, the claim being made on behalf of Frances, the only surviving heir of the testator, that she was entitled to all the properties, while the administrator of the estate of Elias claimed ownership in one half of them. With this situation confronting them the parties in interest made what is termed by counsel

for the plaintiff the second arrangement or agreement covering the collection and accounting for the rentals of the various properties as already recited. Iva having died intestate and unmarried, the remainder interest in the properties in which she held a life estate, had vested in Elias and Minnie, as also had her interest in the estate as a residuary legatee. The sole parties in interest then were the estates of Elias and Minnie. All three of the executors of the estate, being the three children, had died. Application might have been made for the appointment of an administrator *c.t.a.d.b.n.* and proceedings taken to ascertain and enforce the mutual rights of the parties. Instead of taking this action the parties effected a compromise by making a voluntary settlement and adjustment of their respective rights in the income of these properties. Such family settlements are highly favored by courts of equity and "will not be disturbed for any ordinary mistake, either of law or of fact, in the absence of conduct otherwise inequitable, since their very object is to settle all such possible errors without a judicial controversy." 2 Pomeroy's Equity Jurisprudence (4th Ed.) § 850. See also *Ward* v. *Ives,* 75 Conn. 598, 603, 64 Atl. 730; *Nichols* v. *Nichols,* 79 Conn. 644, 645, 66 Atl. 161. The plaintiff contends that this so-called second agreement was not such an enforceable family settlement for two reasons: first, because it is said that all the parties in interest did not participate in it, and second, because it did not finally settle the ultimate ownership of the parties in the fee of these properties. As already pointed out, the only parties in interest were the estates of Elias and Minnie. The plaintiff says that Barclay, administrator of the estate of Elias, was not a party to the arrangement. This is not borne out by the finding. He was directly and actively connected with the accounting that was made of the rents

of all of the properties except 21 Wall Street. As to that property the finding is that the arrangement was made between Cummings, representing the estate of his wife, Minnie, and Mrs. Weaver, as guardian of her daughter Frances. The latter were the sole heirs at law and only persons interested in the estate of Elias of which Barclay was administrator. All of the parties actually interested in these properties were participants in this family settlement. It is true the question of the title to the fee in these properties was not settled until 1919, when the estate of Edward E. Bristol was finally settled, and distribution made by distributors appointed by the Court of Probate. But this agreement covered merely the division of the rentals between these two estates. Not improbably the parties may have anticipated that, when the estate was finally settled, it would be distributed in such a way that the rentals received by each, under the arrangement made, would be such as they were entitled to as determined by the distribution. But the fact that this arrangement continued in force for seventeen or eighteen years, during which time no action was taken toward the settlement of the estate, strongly indicates that the arrangement was something more than a mere *modus vivendi* as it was characterized by counsel, and that the parties intended it to be, and that it was, a final settlement and adjustment of their respective rights to the rentals of the various properties involved, regardless of what the final determination should be as to their legal title when the estate of Edward E. Bristol should finally be settled.

The arrangement between Cummings and Mrs. Weaver as to the rentals of 21 Wall Street appears to have been a voluntary surrender of such rentals by Cummings to her. The fact that there was no dispute between them at the time as to her right to the rentals

did not deprive that arrangement of its character as a family settlement. *Nichols* v. *Nichols, supra,* p. 655. Furthermore, in view of the long acquiescence in this arrangement by all interested parties, its intrinsic justice in that the proceeds were used for the support of Frances, the only living descendent of Edward E. Bristol, and the resulting discontinuance of the allowance which she had been receiving under an order of the Court of Probate, the trial court might properly reach the conclusion upon equitable principles that the arrangement so made should not now be disturbed. *Hurlbut* v. *Phelps,* 30 Conn. 42, 50; *Edwards* v. *Edwards,* 32 Conn. 112, 114; 1 Story's Equity Jurisprudence (14th Ed.) p. 194.

There is no error.

In this opinion the other judges concurred.