OPINION. Hakron, Judge: The principal question is whether the decedent, Elizabeth Vease, made transfers of any property held in the Canadian or American trusts within the meaning of section 811(c) and (d). It is the petitioner’s position that the rule of Lyeth v. Hoey, 305 U.S. 188, is controlling; that under this rule the interest of the decedent in the trusts was, for Federal estate tax purposes, acquired directly by inheritance from her father, James Harrington Walker; that she never became the owner of any of the property in the trusts and did not make any transfers to them, but on the contrary, inherited only a life estate in the trusts with a limited power of appointment; and that consequently she did not make any transfers within the pertinent statutory provisions and no interest in the two trusts passed at her death. The respondent contends that the decedent transferred property to the trusts in which she retained such rights and interests as to render the values of the properties includible in her gross estate under section 811(c) and (d). He contends, further, that the decedent was the settlor of the American trust and a cosettlor with her sister of the Canadian trust. He argues that all the property rights of the devisees and legatees of Walker under his 1918 will, including Elizabeth’s interest, became vested on the date of the death of Walker; that at some time between, the dates of her father’s death and her own, she transferred her rights and interests under her father’s will in exchange for certain rights and interests in the trusts and, therefore, made transfers which come within the statutory provisions under which the respondent’s determination was made. He contends that petitioner’s reliance upon the Lyeih principle is misplaced. The agreement of the widow and children who survived Walker was entered into solely because they desired and intended to give effect to the testamentary intentions and wishes of Walker. Walker’s last testamentary intentions had been given by him to Lash very soon before Walker died, and had been written out by Lash in a draft of a will, which is referred to herein as either the unexecuted will or the 1919 document (since the last will was executed in 1918). The family agreement was entered into in good faith. Such good faith is evidenced by the fact that the parties to the agreement entered into it before they obtained any knowledge or information whatsoever about the provisions of either the 1918 will or the 1919 draft of a proposed new will; and, also by the fact that each party adhered to and complied with that agreement. We regard the issue presented in this case as sui generis because of the fact that the parties to the family agreement entered into it before they learned in any respect about any of the terms and provisions of Walker’s last will and about any of the provisions of the 1919 document, and, therefore, before they had any idea about what modifications of the 1918 will might be contained in the 1919 document, if any. Our consideration of the issue has taken into account this rather unique circumstance. Much of what is said hereinafter is necessarily limited to the particular facts and circumstances of this case. The record shows, without any doubt, that in Canada the Walker estate was administered by the executors and trustees in accordance with the probated will only with respect to all bequests to others than the surviving members of Walker’s family and the general administrative matters which did not relate to the family. On the other hand, with respect to the matters of paying the widow an annuity, making general provisions for her, paying over to her a specific bequest of $200,000 in securities or cash, and not paying over to the daughters any specific bequest of Pere Marquette bonds (as provided in the 1918 will); and of not distributing to a son any share of the residue until he reached 40 years; and of dividing the residue of the estate into 2 equal halves, 50 percent for the three sons and 50 percent for the two daughters, the Canadian part of the estate was administered by the executors and testamentary trustees in accordance with the family agreement. Such compliance with the family agreement to carry out the last directions of Walker, as set forth in the 1919 document, was finally carried to the ultimate one involved here, the transfer by the testamentary trustees of 50 percent of the residue of the Canadian part of the estate to trustees appointed by them of the Daughters’ Trust, the terms and provisions of which were the same as set forth in the 1919 document. It is equally true that in the administration of the American part of the estate, the smaller part, the family agreement was carried out; the daughters and sons, as 2 groups, each received 50 percent of the residue of the American portion of the estate; the one-half thereof set aside for the daughters was distributed in equal 25 percent shares to the same individuals who were the trustees of the Daughters’ Trust in Canada; and 2 trusts were established to receive and hold each 25 percent share. The two American trust indentures contained the same provisions and terms as the Daughters’ Trust in Canada (except for some mechanical differences in wording), which, again, were the same as directed by Walker in the 1919 document. The foregoing also is evidence of the fact that the family agreement was entered into and carried out in good faith. There is no suggestion in the record to the contrary. The family agreement was an arm’s-length agreement. None of the parties was under any compulsion to sign it. Elizabeth, a minor in 1919, was represented by a duly appointed legal guardian, and he stated in his petition to the Probate Court in Detroit that the family agreement had as its purpose the carrying out of the testator’s directions, with respect to the surviving widow and children, contained in an unexecuted draft of a will. After Elizabeth became 21 years old she ratified by her actions her guardian’s act in signing the family agreement for her. It is of importance to point out that in this case, there was absolutely no tax-saving or tax-avoidance motive involved in the family agreement. There is no suggestion in the record in any respect to the contrary. In Michigan, if the rights of creditors and others having claims against the estate will not be impaired, the doctrine of family agreements applies and legatees and devisees and heirs may make agreements with each other and among themselves with respect to their respective interests in an estate, and such agreements, if they are reasonable and entered into understanding^, are valid and are regarded with favor by the courts both at law and in equity. Many other States follow the same rule. The family agreement here was valid. In Michigan, such agreements are valid even when minors are parties in interest. Mich. Stat. Ann, pp. 527, 528, secs. 27.3178(115), (118) (1943 rev.). With respect to the minor, Elizabeth, court approval was obtained; and under retroactive statutory provisions, the Walker family agreement was valid. See Metzner v. Newman, 224 Mich. 324, 194 N.W. 1008; Baas v. Zincke, 218 Mich. 552, 188 N.W. 512. See also Conklin v. Conklin, 165 Mich. 571, 131 N.W. 154; Layer v. Layer, 184 Mich. 663, 151 NW. 759; Foote v. Foote, 61 Mich. 181, 28 N.W. 90. In the case before us,' after the agreement of December 28, 1919, had been signed by Walker’s widow and children, including the decedent who was then only 16 years old, Benfield was appointed guardian ad litem for Elizabeth by the Probate Court in Detroit. Benfield then filed with that court the agreement of December 28,1919, as well as copies of Walker’s will and the draft of the proposed new will made at Walker’s request. Along with these documents, Benfield filed a petition in which he sought the approval and consent of the court to enter into the agreement of February 19, 1920. That agreement was to the same effect as the one of December 28, 1919. The court entered an order hr which it granted Benfield’s petition and authorizing him to execute the second agreement. This procedure was well within the rule laid down in Metzner v. Newman, supra. In Benfield v. United States, 27 F. Supp. 56, the income tax liability of the widow, Margaret Walker, was in dispute. Having before it many of the same facts as are involved here, the court made the finding (No. 8, page 60) that in accordance with the provisions of the (family) agreement, the executors and trustees of the Walker estate “followed the terms and provisions of the unexecuted will in the administration of his estate, and in accordance with the second paragraph of the unexecuted will paid to Margaret T. Walker $75,000 per year * * * until the death of Margaret T. Walker on July 18, 1933.” On the record before us here, we arrive at the same conclusion not only with respect to the payments of the annuity to Margaret Walker but in other respects, as well. The evidence here establishes that the family agreement and the 1919 document were given force and effect in the administration of the Walker estate. It is pertinent to mention a few illustrations of this general fact. On November 3, 1928, the Supreme Court of Ontario entered an order approving the distribution on June 30, 1928, of certain assets of the Canadian portion of the estate in the manner provided by the executors in an affidavit of an officer of the National Trust Company, Ltd. The distribution so outlined followed the provisions of the 1919 document. The order of the court was based upon the agreement and consent of the widow and children (called the family agreement herein) in several respects, one of which was that the court ordered the executors and trustees under Walker’s will to continue to hold the assets to be held for Mary Walker Small and Elizabeth (then Paterson), in which the infant beneficiaries (their children) were interested, until further order of the court. As of November 8,1928, the executors and trustees under Walker’s will had converted assets held in the Daughters’ Trust (in accordance with the 1919 document) into stock of Yorkshire Securities, Ltd., having a book value of $1,585,215.21. When the Canadian trust indenture was executed on December 13, 1934, under an order of the Supreme Court of Ontario, all of the assets held by the testamentary trustees under Walker’s will as the daughters’ shares of the residuary estate were transferred directly to the new trustees of the Canadian trust and there was no distribution to the daughters. The same procedure was followed on December 31, 1936, when the balance of the daughters’ shares of the residue was transferred directly to the trustees of the trust. Also, the daughters were not a party to and did not sign the Canadian trust indenture. With respect to the smaller American trust, there was some variation in the procedure followed by the trustees under Walker’s will, of necessity however; but it is clear that the daughters were acting merely as conduits for the trustees in the manner in which assets were transferred. Walker’s three sons had become financially embarrassed and on May 31,1932, they had assigned all of their interests in the estate to Union Guardian Trust Company, assignee of three banks. In an arm’s-length agreement with that assignee, the interests of the sons and of the daughters in the American portion of the estate and the income were fixed on the basis of 50 percent for the sons and 50 percent for the daughters. A partial distribution was made to the daughters on April 8,1936, and a final distribution was made on winding up the American portion of the estate. On March 4,1940, each daughter conveyed all of her share of the assets so received to the separate American trusts. That they were acting merely as conduits for the testamentary trustees and that they did not receive the distributions as their own property over which they had dominion and control, is shown by the indentures of each American trust which describe in detail the circumstances preceding their execution and expressly state that the conveyances of both daughters were “in obedience of the obligation of said Unexecuted Will” and the prior family agreements. Elizabeth had no choice of freedom with respect to the distribution of property she received on distribution from the American portion of her father’s estate. At the time of such distributions the other parties to the family agreement had in good faith performed their obligations; i.e., the three brothers and their assignees had been limited to 50 percent of the residue of the estate instead of the 60 percent they would have taken under the 1918 will. That 10 percent difference was substantial since the Canadian portion alone of the residuary estate, after the widow’s annuity payments, amounted to $3,736,601.56 of capital, and $2,393,352.34 of income. Our view is, in which we agree with the petitioner, that there were merely temporary, if not technical, distributions from tbe American portion of tbe estate to Elizabeth, and as a matter of substance, sbe did not by virtue of such distributions become tbe owner of the property which in turn she forthwith transferred to the trusts under her obligation under the family agreement. Upon consideration of the whole record and on the basis of the substance of what actually was done, our conclusion is that Elizabeth did not make any transfers to either the Canadian or the American trusts. Under her father’s 1918 will, Elizabeth was given a 20 percent share of the residue of the estate, distributable to her in fee at the age of 30 years. Until she reached 30 years, she was entitled, under the will, to receive the income from such share and a limited amount of principal, not more than $5,000 a year. She never received distribution of a share of the residue, but, in accordance with Walker’s last directions in the 1919 document, she continued to receive only the income of a share of the residue. Also, in fact, in substance, and in effect, her share of the residue passed from the testamentary trustees under the will to the new trustees of the daughters’ trusts (appointed by the testamentary trustees). From the respondent’s argument it is clear that the issue turns on whether Elizabeth can be considered as taking interests by inheritance or under a subsequent agreement, i.e., a contract. In Benfield v. United States, supra at 62, the court said: On this point we think there is no substantial difference between the provisions of the will and those of the unexecuted will put in force by the agreement. The court discussed the rule of Lyeth v. Hoey, supra, and concluded that there was no substantial difference in the tax effects of the two agreements, the one in Lyeth and the Walker agreement. It concluded as follows, page 63: The case before us is somewhat different in its facts, but the case last cited settles some of the controversies we are now considering Under the rules of that cáse, the fact that annual payments were made to Mrs. Walker by virtue of an agreement under which she received more than she would have under the executed will would not prevent the payments made from being exempt if she was an heir, as in fact she was. In the instant case there was no legal conflict between the heirs. The settlement agreement was voluntary and amicable. Under these circumstances, we think that whatever additional she received under the agreement was merely a gift and consequently not taxable. In any event being an heir in fact, we think there is no substantial difference in the effect of the agreement in the instant case from that made in Lyeth v. Hoey, supra, and that she was consequently entitled to hold all she received free from tax. [Emphasis supplied.] Tbe basis of tbe doctrine of Lyeth is tbat the Supreme Court concluded about Lyeth tbat— He was an heir in fact. * * * When by compromise and the decree enforcing It, that disposition [by his ancestor’s will] was limited, what he got from the estate came to him because he was an heir, the compromise serving to remove pro tanto the impediment to his inheritance. The problem here is whether the principle of Lyeth can be applied under the facts and circumstances of this case. The reasoning of Lyeth has been extended to estate and gift tax problems. In re Sage's Estate, 122 F. 2d 480, affirming 42 B.T.A. 1304; Estate of Mary Glare Milner, 6 T.C. 874; Chase National Bank, et al., Executors, 40 B.T.A. 44, 46. Upon the facts and circumstances here, we think the decided cases require the conclusion that Elizabeth did not become the owner of the properties held in the two trusts, as the respondent contends, but that she acquired only a life estate in that property and, consequently, she did not own any interest therein which passed at or by reason of her death. The respondent stresses the point that there was no dispute among the members of the Walker family which was settled by the agreement. Under the facts here, this point is not determinative of the issue. The fact that an agreement settles a right as to which there is no dispute does not deprive it of its character as a family settlement agreement under the doctrine of family settlement agreements. See Cummings v. Weaver, 114 Conn. 325, 158 Atl. 812; Benfield v. United States, supra. The respondent argues, further, that it cannot be concluded that the estate was administered under the terms of the family agreement because the agreement was not filed with the Probate Court, in Michigan at least, along with the will which received probate. The mere fact that the settlement agreement was not embodied in a court order, or was not filed along with the will, does not militate against the holding that the estate was administered under both the will and the terms of the unexecuted will by virtue of the family agreement. See Commercial Nat. Bank of Charlotte v. United States, 196 F. 2d 182, 183, where the court considered it immaterial that no reference was made in a judgment to the amounts paid in settlement under a settlement agreement. In the latter case it was regarded as immaterial that executors were not parties to the compromise agreement which was not incorporated in or made part of the probate proceedings.- We recognize that in some cases emphasis seems to be placed upon the fact that the compromise agreement is made a part of the probate proceeding. Nevertheless, such fact is not determinative and it would appear that each case is to be decided on its own facts. Bailey v. Ratterre, 144 F. Supp. 449, 453, affd. 243 F. 2d 454. Of course, the individual executors of Walker’s estate were parties to the Walker family agreement. Some of the assets in the American part of the Walker estate consisted of real property. Also, during the course of the administration of the estate both in Canada and in the United States, claims arose against the estate (not material Rere) and the executors and trustees were desirous of not having the family agreement readily available to claimants. The parties who signed the family settlement agreement were the only individuals who had any interest in the residuary estate of Walker. They were all sui ju/ris, except Elizabeth, and she was represented by a legal guardian and later by her acts confirmed the agreement after she attained her majority. It is our understanding from the entire record that by not filing the family agreement any semblance of a cloud upon the title of real property was avoided; unnecessary complications with creditors were reduced; and, further, such filing of the agreement was not necessary. In any event, accounts of the executors and trustees which reflected compliance with the family agreement and carrying out the terms of the unexecuted will were approved in the respective Probate Courts. It does not seem possible to distinguish the Lyeth case from the present one in principle. The important point is that what Elizabeth received as a result of the family agreement she took because of her standing as an heir. It was that status which commanded the family agreement and was recognized by it. Basically the respondent’s determination and theory is based upon the fact that there were distributions of properties to the Canadian and American trusts according to the family agreement and contrary to the executed will, as well as upon the fact that the family agreement in turn adopted certain provisions of the unexecuted will. But that is exactly what took place in the case of Lyeth. In that case property of a decedent was distributed to a taxpayer according to a compromise agreement of the interested parties and contrary to a will. The Supreme Court looked through the compromise agreement to the actual fact that “what he [the taxpayer] got from the estate came to him because he was heir.” In this case the decedent, Elizabeth, received a life estate in the trust with a limited power of appointment, and she received that because that was what her father directed that she should receive out of his residuary estate. Such direction was in the unexecuted will, but the family agreement adopted those directions and declared that they should be carried out. Clearly, what this decedent got from the estate of Walker came to her because she was an heir. In Estate of Mary Clare Milner, supra, there was a settlement agreement which was entered into because of a contest which arose because there were two testamentary documents, an old will and a last will which revoked the earlier will. Under the settlement, the mother of Mary Clare Milner acquired nothing more than the right to the income from certain property, a mere life estate, and the remainder, after such life estate, was acquired by others. This Court held that the reasoning in Lyeth was applicable and that the value of the property described in a trust instrument was not includible in the gross estate of Mary Clare Milner. That case closely resembles the instant case. The respondent refers to Bailey v. Batterre, supra, as providing support for his position, but the Bailey case is distinguishable in that the court found that the Rose Bailey trust was not a distribution to the decedent’s son in compromise of a threat to contest his father’s Will, and that rather, the trust created by Rose Bailey for the benefit of her son represented a gift from her of her own property. In that case, the facts did not show that there was any settlement or family agreement pursuant to which there was a division of assets of that estate in contravention of the terms of the will. The Court of Appeals, in affirming the Bailey case, noted the foregoing as a distinguishing factor. Here, the Bailey case is distinguishable on its facts and does not provide support to the respondent. It is held that the decedent, Elizabeth Vease, for the purposes oi section 811(c) and (d) inherited a life estate with a limited power of appointment, in a portion of the residuary estate of Walker; that she never became the owner of the properties placed in the Canadian and American trusts; that she made no transfers of properties to the trusts, reserving a life estate and a power to alter, amend, or revoke; and that no part of the value of the properties in the Canadian and American trusts is includible in her gross estate. The respondent’s determination is reversed. Decision will be entered under Buie 50.