GOODNO et al. v. HOTCHKISS et al.

(District Court, D. Connecticut.   October 23, 1916.)

No. 1437.

1. REFORMATION OF INSTRUMENTS ⬤�net18—GROUNDS—MISTAKE OF LAW.

A court of equity cannot reform or cancel an executed written family agreement for the distribution of an estate on the ground that the parties acted under a mistake as to the legal effect of such agreement.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 72, 73; Dec. Dig. ⬤⟺18.]

2. CANCELLATION OF INSTRUMENTS ⬤⟺47—REFORMATION OF INSTRUMENTS ⬤⟺ ⬤⟺45(1)—ACTIONS—RIGHT AND SUFFICIENCY OF EVIDENCE.

To authorize a court to reform or cancel a written instrument on the ground of mistake, the proof must be clear, unequivocal, and convincing.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 102, 103; Dec. Dig. ⬤⟺47; Reformation of Instruments, Cent. Dig. §§ 157, 171, 177, ·182, 189, 191; Dec. Dig. ⬤⟺45(1).]

3. EVIDENCE ⬤⟺272—DECLARATIONS AGAINST INTEREST—WHEN ADMISSIBLE.

The rule which admits as evidence declarations against interest of parties to the record does not extend to cases when such admission would prejudice a coplaintiff or codefendant of the party making the declarations.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1105–1107; Dec. Dig. ⬤⟺272.]

4. JUDGMENT ⬤⟺475, 640—CONCLUSIVENESS OF ADJUDICATION—DECREE OF PROBATE COURT.

Under the law of Connecticut, a decree of a court of probate, determining who were the heirs of a decedent and what property they were to take, not appealed from, is conclusive, and is not subject to collateral attack, except for fraud.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1154; Dec. Dig. ⬤⟺475, 640.]

5. PARTITION ⬤⟺9(1)—DISTRIBUTION OF ESTATE—FAMILY SETTLEMENT.

A family agreement for the distribution of an estate creates a property status, and a distribution in accordance therewith is binding on the parties and any claiming under them.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 26–31; Dec. Dig. ⬤⟺9(1).]

6. JUDGMENT ⬤⟺592—RES JUDICATA—SECOND SUIT ON SAME CAUSE OF ACTION.

A plaintiff cannot litigate part of a cause of action, and assert claims arising out of that cause of action in one proceeding, and, having been defeated therein, bring a second suit setting up the same cause of action, by introducing other evidence and making other claims.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1107; Dec. Dig. ⬤⟺592.]

7. JUDGMENT ⬤⟺675(2)—PERSONS CONCLUDED—PERSONS PARTICIPATING BY COUNSEL.

One interested in a litigation, who, although not a party to the record, was represented therein by counsel, with the knowledge of the parties, is bound by the judgment, and as fully entitled to the benefit of it as an adjudication as though, a formal party.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1191; Dec. Dig. ⬤⟺675(2).]

⬤⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. LIMITATION OF ACTIONS 103(1)—CAUSES OF ACTION WITHIN STATUTE—SUIT TO ENFORCE EXPRESS TRUST.

The general rule that express trusts are not within the statute of limitations does not apply to a trust openly disavowed by the trustee with the knowledge of the cestui que trust, and the statute begins to run from the time of the disavowal, and applies in favor of persons who become trustees by construction of law.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 500, 506, 509; Dec. Dig. 103(1); Trusts, Cent. Dig. § 570.]

9. COURTS 366(13)—FEDERAL COURTS—AUTHORITY OF STATE STATUTES.

Federal courts, in enforcing claims against estates of decedents and executors and administrators, are bound by the same statutes and rules that govern the local tribunals, including the statute limiting the time for filing claims.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 957, 960; Dec. Dig. 366(13).]

10. EXECUTORS AND ADMINISTRATORS 232—TIME FOR PRESENTATION OF CLAIMS.

The failure to present a claim against an estate within the time limited by statute operates as a complete bar to the enforcement of the demand, which cannot be avoided by any plea of ignorance or mistake.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 830; Dec. Dig. 232.]

11. COURTS 367—FEDERAL COURTS—AUTHORITY OF STATE STATUTES.

A state statute limiting the time for presentation of claims against an estate is a rule of property, and as such binding on a federal court sitting in equity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. 367.]

12. WILLS 697(3)—SUIT TO CONSTRUE WILL—RIGHT OF ACTION.

Under the law of Connecticut, no one but an executor or some fiduciary under the will can ask for its judicial construction, and this must be done before the estate is distributed.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1673; Dec. Dig. 697(3).]

In Equity. Suit by Louise T. Goodno, executrix of the will of Nathaniel S. Hotchkiss, deceased, and individually, and William Goodno, against Marie O. Hotchkiss, individually, as executrix of the will of Mary A. F. Hotchkiss, deceased, and as administratrix of the estate of William H. Hotchkiss, deceased, and Yale University. Decree for defendants.

See, also, 230 Fed. 514.

Prentice W. Chase and A. Heaton Robertson, both of New Haven, Conn., for plaintiffs.

George D. Watrous and Thomas M. Steele, both of New Haven, Conn., for defendant Marie O. Hotchkiss.

Henry Stoddard, of New Haven, Conn., for defendant Yale University.

THOMAS, District Judge. This case arises on final hearing on pleadings and proofs in a bill in equity. The plaintiffs are Louise T. Goodno and her husband, William C. Goodno, both residing in Pasadena, Cal. Mrs. Goodno brings this suit individually in her own right,

and as executrix of the last will and testament of her father, Nathaniel S. Hotchkiss, deceased. The defendants are Marie O. Hotchkiss, individually and as executrix of the last will and testament of her mother, Mary A. F. Hotchkiss, widow of Henry O. Hotchkiss, and as administratrix of the estate of her brother, William H. Hotchkiss, deceased, and Yale University, both legal residents of New Haven, Conn.

Henry O. Hotchkiss died domiciled in New Haven on the 4th day of December, 1883. He left a widow, Mary A. F. Hotchkiss, and three children, Nathaniel S., William H., and Marie O. Mary A. F. Hotchkiss, Nathaniel S., and William H. have since died. The plaintiff Louise T. Goodno is a daughter of Nathaniel. Mary A. F. Hotchkiss left a will, and her daughter Marie, one of the defendants, is the executrix of said will, and is also the administratrix of the estate of her brother William, who died intestate.

The bill of complaint charges in substance that said Henry O. Hotchkiss, deceased, left an unsigned will, and that, following his death, the widow, Mary A. F. Hotchkiss, and his three children surviving him, to wit, Marie O. Hotchkiss, William H. Hotchkiss, and Nathaniel S. Hotchkiss (father of the plaintiff Louise T. Goodno) mutually agreed in writing to divide the estate of said Henry O. Hotchkiss among themselves in the proportions indicated by him in his unsigned will, and that thereafter a division was effected in accordance with the terms of the so-called "family agreement." It is further alleged in the bill that this division did not carry out and effect the actual intention manifested in the unsigned will; that after this division was made said Mary A. F. Hotchkiss settled her account as administratrix; that thereafter said Mary A. F. Hotchkiss drafted a will in her own handwriting, which was duly executed, and which, with subsequent codicils, was admitted to probate June 8, 1912; that the estate of said Mary A. F. Hotchkiss consisted in part of property which she had obtained from her husband under the division made according to the terms of the family agreement and in violation of the provisions of the unsigned will, and also in part of property which she had obtained from the estate of her son, William H. Hotchkiss, who had predeceased her, and which was given to him in violation of the provisions of the unsigned will and the family agreement, and that all of said property so obtained by said Mary A. F. Hotchkiss was subject to a trust arising from the actual agreement and the terms of the unsigned will; that the defendant Marie O. Hotchkiss was the executrix of said will and codicils of her mother, Mary A. F. Hotchkiss, and was also the administratrix of her brother's estate; that Yale University is a legatee named in said will of Mary A. F. Hotchkiss; and that certain parts of said will are vague and indefinite.

The bill of complaint then prays that the family agreement be given its true effect by this court, and also demands its enforcement pursuant to the provisions of the unsigned will as construed by the plaintiff; that the amount of the share belonging to the estate of Nathaniel S. Hotchkiss, deceased, or due his heir at law, Louise T. Goodno, be ascertained, and that judgment be rendered for said amount against the defendants, who now hold or claim said property; that the mutual dis-

tribution of January 9, 1884, be set aside on the ground that it was made by mistake, and is unjust, inequitable, and without consideration; that it be corrected to conform to the true intent and meaning of the parties; a construction of the will of Mary A. F. Hotchkiss; an accounting from Marie O. Hotchkiss as executrix of all the property coming to her formerly belonging to the estate of Henry O. Hotchkiss, deceased; its earnings and increase from the date of the division; an accounting from said Marie O. Hotchkiss individually for all moneys she has received from the principal of the estate of Henry O. Hotchkiss from the date of the family agreement; a judgment that she be directed to pay said moneys into court for the purpose of apportioning the same under the plaintiff's construction of the family agreement; an accounting from said Marie O. Hotchkiss, as administratrix of the estate of her brother, William H. Hotchkiss, deceased, for all moneys and properties received by William H. Hotchkiss during his life, or by her as administratrix since his decease, and to pay into this court such sums as may be found to have been received by said William H. Hotchkiss over and above his lawful share in the estate of his father, Henry O. Hotchkiss.

Separate answers have been filed to this bill of complaint by the daughter Marie, as administratrix, executrix, and individually, and by Yale University. In addition to a general denial, which has been filed by each defendant, their answers set up several special defenses, which are as follows:

(1) The mistake in the execution of the family agreement and the proceedings thereunder, if any was one of law, pure and simple, for which equity can grant no relief.

(2) Res adjudicata arising, first, from a decree of the court of probate for the district of New Haven, dated October 23, 1913, finally and completely distributing the estate of Henry O. Hotchkiss, from which decree an appeal has never been taken; and, second, the judgments of the state courts of Connecticut in the appeal from the probate of the will of Mary A. F. Hotchkiss on the ground of mental incapacity and undue influence, and the appeal from the orders of the court of probate, disallowing the supplementary account of the daughter Marie, as executrix of the estate of her mother on the intestate estate of Henry O. Hotchkiss, and appointing an administrator de bonis non of the estate of Henry O. Hotchkiss.

(3) That all of the claims relied upon by the plaintiff have been barred by statutes of limitation and nonclaim.

The facts upon which the case hinges are substantially as follows:

The estate of Henry O. Hotchkiss amounted to approximately $265,-000. After his death there was found among his papers a holographic draft of a will drawn in 1873, which was never executed, by which he intended to give $10,000 to each of his three children, Nathaniel, William, and Marie, and $5,000 additional to his daughter, Marie, because, as stated in this draft, Marie had not had the same advantages or opportunities for providing for her comfort as the boys, thus making the total gift to his daughter $15,000. It then provided that all the rest and residue of his estate be given to his wife, Mary, and to her heirs

237 F.—44

forever. In this draft he referred to his wife as one "who had so long and faithfully aided me to acquire my estate," and then added:

"Having the fullest confidence in her good judgment that any reasonable requirements of our children will receive her approval and assistance, and furthermore, I hope and believe our children will be satisfied with the provision made for their mother and do all in their power to aid and assist her."

Following Mr. Hotchkiss' death, and on January 9, 1884, letters of administration were granted to his widow as administratrix of his intestate estate, and on the same day his widow and the three children entered into a family agreement in writing, which was signed, executed, witnessed, and acknowledged as a deed of real estate, and which follows the provisions of the Connecticut statute—Revision of 1902, § 395—providing for a mutual distribution of the estate of a deceased person, and which has the same effect as a distribution made by distributors and is a substitute for it (Mathews' Appeal, 72 Conn. 555, 559, 45 Atl. 170; Seymour v. Seymour, 22 Conn. 272), which family agreement is as follows:

"Whereas, Henry O. Hotchkiss, late of New Haven, Connecticut, deceased, left an instrument purporting to be his last will and testament, but said instrument was not signed and executed by him as a will;

"And whereas, we, Mary A. F. Hotchkiss, the widow, and Nathaniel S. Hotchkiss, William H. Hotchkiss, and Marie O. Hotchkiss, the three and only children of said Henry O. Hotchkiss, deceased, being the only persons interested in said estate of Henry O. Hotchkiss, and believing that said unexecuted will discloses the real intention of said deceased as to the disposition of his property, and we being desirous of carrying that intention into full effect:

"Therefore we have entered into the following mutual agreement:

"We do hereby mutually agree, in consideration of the promises and agreements of the other parties to this instrument, that when the estate of said Henry O. Hotchkiss is ready for distribution that we will divide the same between ourselves in the manner and in the proportion indicated in said instrument purporting to be the unexecuted will of said deceased, which instrument is hereto annexed and made part of this agreement.

"And we, the said Nathaniel S. Hotchkiss, William H. Hotchkiss, and Marie O. Hotchkiss, the children of said deceased, for the consideration aforesaid, do hereby bargain, sell, and convey to our mother, said Mary A. F. Hotchkiss, her heirs and assigns, all our interest in the estate of Henry O. Hotchkiss, deceased, both real and personal estate, except said sum of $35,000 mentioned in said instrument purporting to be a will, which sum of $35,000 we reserve to ourselves, in the sums and proportions named in said instrument.

"And I, the said Mary A. F. Hotchkiss, in consideration of the agreements and conveyances of my said three children above named to me, do hereby agree to transfer to my said three children from said estate the sum of $35,000, as follows, viz.: To said Nathaniel S. Hotchkiss, $10,000; to said William H. Hotchkiss, $10,000; and to said Marie O. Hotchkiss, $15,000— such transfer of said sums to my said children from said estate to be made as soon as said estate is ready for distribution.

"And we, the said parties to this instrument, do hereby mutually agree each with the other, for the consideration aforesaid, that we will execute, each to the other, such other instruments of conveyance as may be deemed necessary either in law or equity to carry this agreement into full effect, and we do hereby bind ourselves, our respective heirs, executors, and administrators, to the full and complete performance of this agreement."

At the time said agreement was executed Nathaniel was 41 years of age, William was 36, and Marie was 33.

In full compliance with and in pursuance of the agreement the widow paid over and transferred to Nathaniel $10,000, to William $10,000,

and to Marie $15,000, and took receipts from each therefor. Later, and on July 22, 1884, all of the three children executed a quitclaim deed of all real estate owned by Henry O. Hotchkiss at his decease to their mother, and on or about the 24th of December, 1899, they executed a warranty deed to their mother of the family homestead on Church street in New Haven, which she later sold for about $85,000.

Mrs. Hotchkiss died on May 17, 1912, and during her life no claim was made by any person that this family agreement did not contain the express wishes and desires of the father and mother and each and all of the children. Mrs. Hotchkiss left a will with three codicils. The original will was dated January 5, 1895, in which she made certain provisions for the three children, Nathaniel, William, and Marie. The first codicil was dated May 1, 1900, in which she made different provisions, in view of the fact that the homestead had been sold and the avails of the sale had been given to Marie; the second codicil was dated July 31, 1905, shortly after the death of her son Nathaniel, by which she revoked the provisions made in his favor; and the third codicil, dated August 7, 1907, shortly after the death of her son William, by which the provisions she had formerly made in his favor were revoked. In the will and in the codicils Mrs. Hotchkiss regarded and treated, as she had done after the execution of the family agreement, the property coming from her husband as her own, excepting the $35,000 transferred to the children, and at various times subsequent to the execution of the family agreement, and prior to 1895, Mrs. Hotchkiss transferred to herself all of her husband's property excepting the $35,000 above mentioned. These transfers to herself by herself were completed in 1895. They were openly made, with no attempt at secrecy or concealment. Mrs. Hotchkiss was, at all times after the family agreement was executed and prior to her death, in the open and notorious possession of the property which she had thus acquired. Her will was admitted to probate on June 8, 1912, by the court of probate for the district of Madison, in New Haven county, in which district she was domiciled at her death. An appeal was taken from this decision by Mrs. Goodno to the superior court for New Haven county, on the ground that Mrs. Hotchkiss was incompetent, and that the will was procured through fraud and undue influence. The trial of this appeal resulted in a verdict of the jury sustaining the will, and the judgment entered on this verdict was subsequently sustained by the Supreme Court of Errors on appeal. Goodno v. Hotchkiss, 88 Conn. 655, 92 Atl. 419.

On September 29, 1913, Mrs. Goodno applied to the court of probate for the district of New Haven for a distribution of the estate of Henry O. Hotchkiss, alleging in her application that said estate had never been distributed. Hearings were had on this application, and in the progress of one of the hearings, the family agreement was produced and presented to the court as a mutual distribution pursuant to the Connecticut statute (General Statutes, Revision of 1902, § 395), and was examined by Mrs. Goodno's counsel, who was then present, and by Mrs. Goodno herself. This agreement was thereupon, at the request of counsel for Mrs. Goodno, filed in and received by said court of probate and recorded on October 23, 1913, and no appeal was taken

from the order of court directing the agreement to be recorded. This application of Mrs. Goodno for the distribution of her grandfather's estate was denied and dismissed by the court of probate on October 23, 1913. On October 29, 1913, Mrs. Goodno, as executrix of the estate of her father, Nathaniel S. Hotchkiss, made another application to the court of probate for the district of New Haven, in which she alleged that said Marie O. Hotchkiss, executor of the will of her grandmother, the widow of Henry O. Hotchkiss, had returned to the probate court for the district of New Haven a paper claiming the same to be in the nature of a mutual distribution of the estate of her grandfather, and annexed to that application was a copy thereof. Mrs. Goodno further alleged in this application that "said paper was not a mutual distribution of said estate, but was and is in the nature of an executory contract, contemplating, in effect, a mutual distribution of said estate, and was not a mutual distribution in fact, nor was the same received as such by the said court of probate," and that "no distribution as contemplated by the family had been made," and thereupon prayed for the appointment of an administrator de bonis non to complete the settlement of her grandfather's estate, and asked the probate court to take such action "that the estate may be distributed according to law and equity and in accordance with the executory contract entered into by all parties of interest." A hearing on this application was had, and an order passed, dated November 13, 1913, appointing an administrator de bonis non of said estate.

On December 8, 1913, Marie O. Hotchkiss, as executrix of her mother's estate, who was administratrix of the intestate estate of Henry O. Hotchkiss, gave to the court of probate for the district of New Haven a statement and final account of the estate of her father, Henry O. Hotchkiss, which showed the payment of $10,000 each to Nathaniel and William and of $15,000 to herself, and the payment and transfer of the balance of the personal estate to Mary A. F. Hotchkiss under the family agreement of distribution, said balance amounting to $178,-000, asking in her application for the allowance of her account, and stating that Mrs. Hotchkiss and the three children had entered into said agreement of distribution, which was made, executed, and acknowledged like deeds of land, reciting that this distribution was now on file in the probate court and duly recorded. A hearing was had on the allowance of this account, and all the parties in interest, including all the parties of this suit, appeared and were heard; Mrs. Goodno objecting to its allowance. Her objection was sustained, and an order was entered bearing date of December 30, 1913, disallowing the account, and a further order was entered, ascertaining the widow and heirs of Henry O. Hotchkiss, and appointing distributors, and ordering a distribution according to law. From this order, and from the order appointing an administrator de bonis non on the estate of Henry O. Hotchkiss, appeals were taken by Marie O. Hotchkiss to the superior court for New Haven county.

In both appeals the plaintiff, Mrs. Goodno, demurred to the reasons of appeal filed by Marie O. Hotchkiss, and assigned the following grounds:

"Because it appears from the records of the probate court for the district of New Haven in the estate of Henry O. Hotchkiss, deceased, that at the time said application was made for the appointment of an administrator de bonis non- that said estate was not fully settled according to law, and that no distributors had ever been appointed by the court, and no return had ever been made to said court of a valid mutual distribution.

"(2) In so far as the reasons of appeal purport to state as a reason that a mutual distribution in accordance with section 395 had been entered into by the persons interested in the estate of Henry O. Hotchkiss, as set forth in Exhibit A, attached to said reasons of appeal, the appellee demurs, because it appears in said Exhibit A that it is not a mutual distribution of said estate.

"(3) In so far as the reasons of appeal purport to state as a reason that both Nathaniel S. Hotchkiss, deceased, during his lifetime was, and Louise T. Goodno at the present time is, estopped from disputing that said Exhibit A is a mutual distribution as required by law, the appellee demurs, because these are questions to be raised in a court of equity, and cannot be raised in this court sitting as a court of probate as a reason against granting the petition of the appellee for the appointment of an administrator de bonis non in this case.

"(4) So far as the reasons of appeal purport to state as a reason that Mrs. Mary A. F. Hotchkiss, administratrix of the estate of Henry O. Hotchkiss, or as an individual, acquired title to all of said estate during her lifetime by adverse possession, the appellee demurs, because said subject-matter cannot legally be set up as a reason against the granting of the petition of the appellee for the appointment of an administrator de bonis non in this appeal from probate.

"(5) In so far as the reasons of appeal purport to state as a reason that Nathaniel S. Hotchkiss, deceased, was during his lifetime estopped from disputing the claim of said Mary A. F. Hotchkiss to a title by adverse possession, the appellee demurs, because said subject-matter is not a proper or legal ground of objection to the granting of the petition of the appellee for the appointment of an administrator de bonis non in this case.

"(6) In so far as the reasons of appeal purport to state as a reason that there is a conclusive presumption that said estate has been settled according to law, arising from the long lapse of time between the appointment of said Mary A. F. Hotchkiss as administratrix and the time of her death, the appellee demurs, because said subject-matter is not a valid objection to the granting of the petition of the appellee for the appointment of an administrator de bonis non, and because there is no such presumption existing as a matter of law.

"(7) In so far as the reasons of appeal purport to state as a reason that Louise T. Goodno has no interest either as an individual or in a representative capacity sufficient to ask for the appointment of an administrator de bonis non, the appellee demurs, because it does appear that she claims an interest in the estate of Henry O. Hotchkiss.

"(8) The appellee demurs to said reasons of appeal, because it appears from the records of the probate court in said estate of Henry O. Hotchkiss that an essential matter relating to the orderly settlement of said estate remained neglected and unattended to.

"(9) The appellee demurs to said reasons of appeal, because it appears in said reasons of appeal and the records of the probate court in said estate of Henry O. Hotchkiss that recourse to a court having jurisdiction of equitable matters will be necessary in order to adjudicate the claims raised in the said reasons of appeal, and therefore an administrator de bonis non is necessary to care for the interests of said estate in said litigation."

These demurrers were overruled. Thereupon answers were filed in which Mrs. Goodno expressly alleged that the family agreement was made by the widow and children, all of them being legally entitled to act, and that it was made, executed, and acknowledged like deeds of land, and that it was filed and recorded in the probate court prior to the time of the filing of the supplementary administratrix's account

and is recorded in the records of the probate court. Mrs. Goodno also expressly alleged in this answer that the family agreement was not offered for record, was not received for record, and neither is it now on record or recorded in said probate court for the mutual distribution or division of said property, which allegations Marie O. Hotchkiss explicitly denied in her reply, fully alleging that the family agreement was recorded in the records of the probate court by order of said court and was a valid distribution of said estate. To this reply filed by said Marie O. Hotchkiss, the plaintiff Louise T. Goodno filed a rejoinder, in which she denied that there was a division made by all of the parties interested in the estate, and that it was made, executed, and acknowledged like deeds of land, and that it was filed in the court of probate and in the records of said court by order of said court, and was a valid distribution of said estate.

These two appeals were tried together in the superior court, and judgments were therein entered on November 20, 1914, reversing and disaffirming the orders appealed from, and adjudging and declaring that "the estate of Henry O. Hotchkiss had been divided and distributed by mutual division and distribution of the same according to law." The learned trial judge who presided at the trial of these appeals filed a memorandum holding that the recording of the family agreement by the court of probate implied, not only the ascertainment of heirs and distributees, but that there was also implied the equally incidental finding by the court of probate that the instrument voiced the intention of all the parties interested in the estate, and they were all legally capable to act, and that the court of probate would be without authority to enter upon the record an instrument purporting to make a distribution until satisfied that all of its requirements had been complied with, and that the recording of such paper is as conclusive of the existence of its prerequisites as an order of distribution is that the heirs and distributees had been ascertained by the court of probate. These judgments were supplemented by a finding of the superior court —the same finding being filed in each of the appeals—that Henry O. Hotchkiss' widow and his three children, Nathaniel, William, and Marie, were all the heirs at law of said Henry O. Hotchkiss, were all of full age and legally capable to act, and that the family agreement dividing said estate was in the form of a written instrument made, executed, and acknowledged like deeds of land, and that it was recorded in the court of probate, and that the several payments made by Mary A. F. Hotchkiss to each of the three children were received pursuant to and in execution and satisfaction of the written agreement, and in full settlement of all claims which any of said children had to and against the estate of Henry O. Hotchkiss, or against Mary A. F. Hotchkiss, individually or as administratrix of the estate, on account of said relation as heirs and next of kin, and that the instrument itself expressed the intention and wishes of the heirs at the time the instrument was made, that these intentions were not later altered by any of the parties, that from and after the execution of this instrument all of the parties regarded it as a final distribution of said estate and all of the interest of all the parties therein, and no one of them during his or her life ever questioned its validity, and all promises and conditions of said

instrument have been fully complied with by all of the parties thereto, and that this family agreement was delivered to the court of probate, and was received and ordered put on record by the court of probate, and ever since has been in the custody of the court. On appeal these findings of fact and conclusions of law were sustained in full by the Supreme Court of Errors. Hotchkiss' Appeal, 89 Conn. 420, 95 Atl. 26.

Upon all the evidence I find the following facts:

(1) There was no misapprehension or mistake in fact by Mary A. F. Hotchkiss, or any one of her three children, in executing the family agreement. The sole and exclusive purpose of the children in signing the document was to fulfill the desires of their father, and the agreement as executed fully expressed the intentions of all the parties to it, and all of the parties knew its contents when they signed and executed it. By this family agreement, Henry O. Hotchkiss' three children, Nathaniel, William, and Marie, knew that they gave to their mother whatever part of their father's property they were entitled to receive, the same to be hers absolutely and in fee simple, retaining to themselves $35,000, as set forth in the agreement. They did this because their father's unsigned will showed that he wished his property to be thus divided, and because they desired to carry out the wishes of their father, whom they loved and respected, feeling that in honor they were so bound.

(2) Immediately after the settlement by Mary A. F. Hotchkiss of her account as administratrix of the estate of her husband, the division was made as prescribed in the instrument and immediately after its execution.

(3) The estate of Henry O. Hotchkiss was finally and completely distributed by the decree of the court of probate on October 23, 1913, and this decree stands unappealed from upon the records of the court of probate, and all of the children of Henry O. Hotchkiss had actual knowledge and legal notice of this decree.

(4) It was clearly decided in the two appeals that the estate of Henry O. Hotchkiss had been completely and validly distributed among the widow and the three children in accordance with the family agreement, and that at the time of the application for the appointment of an administrator de bonis non no assets remained to be distributed, and that therefore there could be no portion of the estate to which the plaintiff Louise T. Goodno was entitled; that Mary A. F. Hotchkiss was entitled to the absolute title to all of the property, with the exception of the $35,000, since this was the basis upon which the supplemental account had been drawn up; that Mary A. F. Hotchkiss turned over to herself the balance of the property upon the understanding by and with intention of all the parties that the portion received was received pursuant to and in execution and satisfaction of the family agreement, and in full settlement of all claims which any of the children had to or against the estate, or against Mary A. F. Hotchkiss, individually or as administratrix.

[5] No claim was made or presented by the plaintiffs, or either of them, to or against the estate of Mary A. F. Hotchkiss, or the estate of William H. Hotchkiss, within the time in which claims must be presented and suits brought against the estates of deceased persons by

the Connecticut statutes, and all of the necessary proceedings, notices, etc., as prescribed by the Connecticut statutes were complied with.

I find the following conclusions of law:

[1] Irrespective of the other defenses, the plaintiffs have not proved such conditions as will entitle them to relief in a court of equity by way of reformation or cancellation. There was clearly no mistake of fact; the mistake, if any, was at the most a mistake as to the legal effect of the family agreement, without the addition of any circumstances of fraud or misrepresentation, for which there is no relief in the federal equity courts. Rogers v. Ingham, 3 Ch. Div. 351; Chandler v. Pomeroy, 143 U. S. 318, 337, 12 Sup. Ct. 410, 36 L. Ed. 169; Utermehle v. Norment, 197 U. S. 40, 56, 25 Sup. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520, and cases there cited; Bank of the U. S. v. Daniel, 12 Pet. 32, 57, 9 L. Ed. 989; Hunt v. Rousmaniere's Adm'r, 1 Pet. 1, 7 L. Ed. 27; Allen v. Galloway (C. C.) 30 Fed. 466; Hamblin v. Bishop (C. C.) 41 Fed. 74.

[2] Moreover, there is not the amount of evidence which is required for the purpose of setting aside a mistake and canceling or reforming a written instrument. Such evidence must be clear, unequivocal, and convincing. Maxwell Land-Grant Case, 121 U. S. 325, 381, 7 Sup. Ct. 1015, 30 L. Ed. 949; Atlantic Delaine Co. v. James, 94 U. S. 207, 214, 24 L. Ed. 112; Baltzer v. Raleigh & Augusta Railroad, 115 U. S. 634, 6 Sup. Ct. 216, 29 L. Ed. 505; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 435, 12 Sup. Ct. 239, 35 L. Ed. 1063; Campbell v. Northwest Eckington Improvement Co., 229 U. S. 561, 584, 33 Sup. Ct. 796, 57 L. Ed. 1330; Bispham's Equity (9th Ed.) § 469.

[3] The evidence to support the claim of the plaintiffs is, to say the least, meager, vague, and unsatisfactory, even if it is admissible. It consists substantially of declarations made by William H. Hotchkiss and Nathaniel S. Hotchkiss as to their understanding of the legal effect of the family agreement, and that the property of the estate after its conveyance to Mary A. F. Hotchkiss was subject to a trust in favor of the children, and the state of mind of Mary A. F. Hotchkiss and her daughter Marie prior and subsequent to the time of the signing of the family agreement. These are not declarations against interest, nor within the rule which permits declarations of a party to the record, for the reason that this rule has not been extended to include declarations of one coplaintiff or codefendant against another merely by virtue of his position as a coparty in the litigation (2 Wigmore on Evidence, § 1076), and the rule excludes such admissions, even against the party making them, whenever by so doing the other coparty would be prejudiced (Dale's Appeal, 57 Conn. 127, 140, 17 Atl. 757; Livingston's Appeal, 63 Conn. 68, 76, 26 Atl. 470). The only ground upon which these admissions can possibly be received is by virtue of the Connecticut statute—General Statutes, Revision of 1902, § 705, covering the declarations and memoranda of deceased persons in suits by or against their representatives—but this statute applies only in favor of those who sue or defend in the interest of the estate, either as personal representative, heir, distributee, or purchaser by will, so as to prevent unwarranted inroads upon estates of deceased persons in favor of the living, whose mouths are not closed. But, even if they are admis-

sible, they have not the sufficient probative value to bring the case within the standard required by the authorities cited.

[4] The decree of the court of probate of October 23, 1913, having *not* been appealed from, conclusively determines who were the heirs and what property they were to take, and is *not* subject to collateral attack. Kellogg v. Johnson, 38 Conn. 269; Ward, Adm'r, v. Ives et al., 75 Conn. 598, 54 Atl. 730; Hall v. Pierson, 63 Conn. 332, 28 Atl. 544; Leake v. Watson, 58 Conn. 332, 20 Atl. 343, 8 L. R. A. 666, 18 Am. St. Rep. 270; Bissell v. Bissell, 24 Conn. 241; Hotchkiss' Appeal, 89 Conn. 420, 95 Atl. 26; Pierce v. Prescott, 128 Mass. 140.

The Connecticut statute—Revision of 1902, § 194—containing the provision that "no order made by a court of probate upon any matter within its jurisdiction shall be attacked, collaterally, except for fraud, or set aside save by appeal," simply recites the pre-existing law as administered by the courts of Connecticut. Mallory's Appeal, 62 Conn. 218, 25 Atl. 109.

Under the decisions of the Connecticut courts, collateral attacks upon decrees of courts of probate have been limited to cases of fraud or want of jurisdiction; but in all other cases, including cases of distribution, such decrees have been uniformly and consistently treated as judgments of courts of competent jurisdiction and in the nature of judgments in rem, and conclusively bind the subject-matter in controversy against all persons or their privies who have any interest in the subject-matter. Johnes v. Jackson, 67 Conn. 81, 90, 34 Atl. 709; State of Conn. v. Blake, Trustee, 69 Conn. 64, 78, 36 Atl. 1019; Delehanty v. Pitkin, 76 Conn. 412, 416, 56 Atl. 881; Dickinson v. Hayes, 31 Conn. 417; Mix's Appeal, 35 Conn. 121, 122, 95 Am.-Dec. 222; Shelton v. Hadlock, 62 Conn. 143, 153, 25 Atl. 483; Bissell v. Bissell, 24 Conn. 241, 246; Fortune v. Buck, 23 Conn. 1; Gates v. Treat, 17 Conn. 388, 392; Judson v. Lake, 3 Day (Conn.) 318.

The decisions of the Connecticut courts in the cases cited are in direct accordance with the rule recognized by the Supreme Court in Tilt v. Kelsey, 207 U. S. 43, 57, 28 Sup. Ct. 1, 52 L. Ed. 95, where it was said that the extent to which an order of distribution is open to attack in a collateral proceeding by those who were not parties to it is a matter to be determined by each state according to its own views of public policy, and that in Connecticut such a decree is binding upon all, whether they were parties or not.

[5] The court of probate had jurisdiction to make this decree, as was distinctly held in Hotchkiss' Appeal, 89 Conn. 420, 95 Atl. 26, supra; but, if it did not have, the family agreement created a property status to which all the parties elected to conform, was binding, and cannot now be disturbed. Ward, Adm'r, v. Ives et al., 75 Conn. 598, 603, 54 Atl. 730; Chandler v. Pomeroy, 143 U. S. 318, 12 Sup. Ct. 410, 36 L. Ed. 169, supra; Utermehle v. Norment, 197 U. S. 56, 25 Sup. Ct. 291, 49 L. Ed. 655, supra; Bispham's Equity (9th Ed.) § 189; Burnes v. Burnes (C. C.) 132 Fed. 485, 494.

"Compromises, where doubts with respect to individual rights, especially among members of the same family, have arisen, and where all the parties, instead of ascertaining and enforcing their mutual rights and obligations, which are yet undetermined and uncertain, intentionally put an end to all

controversy by a voluntary transaction in the way of a compromise, are highly favored by courts of equity. They will not be disturbed for any ordinary mistake either of law or of fact, in the absence of conduct otherwise inequitable, since their very object is to settle all such possible errors without a judicial controversy." Pomeroy's Equity Jurisprudence, vol. 2 (3d Ed.) § 850.

[6] The transactions involved in this suit were the subject of litigation in the state courts of Connecticut, and their consideration and decisions were essential to the judgments rendered therein, so that the case falls clearly within the rule of res adjudicata.

"A matter of fact, or generally speaking of law, once adjudicated by a court of competent jurisdiction, concurrent or exclusive, however erroneous the adjudication, may be relied upon as an estoppel in any subsequent collateral suit in the same or any other court, at law, in chancery, in probate, or in admiralty, when either party, or the privies of either party, allege anything inconsistent with it; and this, too, whether the subsequent suit is upon the same or a different cause of action." Bigelow on Estoppel (6th Ed.) 110, 111.

An estoppel by judgment grows out of matter of substance, and not of form, and the authorities put beyond all question the proposition that the plaintiff cannot litigate a part of the cause of action and assert claims arising out of that cause of action in one proceeding, and, having been defeated therein, bring a second suit setting up the same cause of action, by introducing other evidence and making other claims. Huntley v. Holt, 59 Conn. 102, 22 Atl. 34, 21 Am. St. Rep. 71; Mosman v. Sanford, 52 Conn. 23; Supples v. Cannon, 44 Conn. 431; Munson v. Munson, 30 Conn. 425; Sargent & Co. v. N. H. Steamboat Co., 65 Conn. 116, 126, 31 Atl. 543; Brennan v. Berlin Iron Bridge Co., 71 Conn. 479, 490, 42 Atl. 625; Freeman's Appeal, 71 Conn. 708, 717, 43 Atl. 185; Wildman v. Wildman, 70 Conn. 700, 41 Atl. 1; Wilson v. Cheshire Brass Co., 88 Conn. 118, 89 Atl. 903; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Southern Pacific R. R. v. United States, 168 U. S. 1, 48, 18 Sup. Ct. 18, 42 L. Ed. 355 (in which there is an extended examination of the adjudged cases); Northern Pacific Railway v. Slaght, 205 U. S. 122, 27 Sup. Ct. 442, 51 L. Ed. 738; Mitchell v. First National Bank of Chicago, 180 U. S. 471, 21 Sup. Ct. 418, 45 L. Ed. 627; Doran v. Kennedy, 237 U. S. 362, 35 Sup. Ct. 615, 59 L. Ed. 996.

"It is not necessary to the conclusiveness of a former judgment that issue should have been taken upon the precise point controverted in the second action. Whatever is necessarily implied in the former decision, is for the purpose of the estoppel deemed to have been actually decided." Pray et al. v. Hegeman et al., 98 N. Y. 351, 358.

"It is the fact that the same point has been once tried, and not the manner of proving it, that precludes the parties from again contesting it. The mode of proving it cannot affect the quality or legal effect of a fact." Walker v. Chase, 53 Me. 258, 261.

In Mitchell v. First National Bank of Chicago, 180 U. S. 471, 481, 21 Sup. Ct. 418, 422 (45 L. Ed. 627), which involved a collateral attack upon a judgment of the Supreme Court of Errors of Connecticut, it was said by Mr. Justice Harlan, delivering the judgment of the Supreme Court, in answer to the contention that the question there pre-

sented was one of general jurisprudence involving the rights of citizens of different states, and the Circuit Court was not bound to accept the views of the state court, but was at liberty, indeed under a duty, to follow its own independent judgment as to the legal rights of the parties, that:

"If it were true that the question was in whole or in part one of general law, the thing adjudged by the state court when properly brought to the attention of the Circuit Court would still be conclusive between the same parties or their privies. Whatever may be the nature of a question presented for judicial determination—whether depending on federal, general, or local law—if it be embraced by the issues made, its determination by a court having jurisdiction of the parties and of the subject-matter binds the parties and their privies so long as the judgment remains unmodified or unreversed."

There is, moreover, such identity of parties as to make the former judgment of the Connecticut courts binding in this suit. Mrs. Goodno was a party to the appeal involving the validity of Mrs. Hotchkiss' will, and the daughter Marie was named as a respondent therein, individually and as executrix and administratrix. From the order appointing an administrator de bonis non and the order disallowing the supplemental account, notice was given to Mrs. Goodno, and she appeared and was fully heard. Although Mrs. Goodno's husband, who is joined as a party plaintiff in this action, was not a party to either of the appeals, he, as her husband, is nevertheless in privity with his wife, and is bound by the judgment for the reason that whatever interest he may have in the suit arises from his marriage to her and is derived from her relationship as the granddaughter of Henry O. Hotchkiss.

[7] And while Yale University was not a party of record to any of the appeals, it did employ counsel, who appeared for it with the knowledge of opposing counsel engaged in the conduct and management of the litigation. It is therefore bound by the judgments, and is as fully entitled now to take advantage of them as though it had been a party to the record. Eagle Mfg. Co. v. Miller (C. C.) 41 Fed. 351; Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129; Robbins v. Chicago City, 4 Wall. 657, 18 L. Ed. 427; Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712; Souffront·v. Compagnie Des Sucreries, 217 U. S. 475, 487, 30 Sup. Ct. 608, 54 L. Ed. 846; Waterbury v. Waterbury Traction Co., 74 Conn. 152, 162, 50 Atl. 3.

All claims of the plaintiffs against the defendant Marie O. Hotchkiss, as executrix of the-will of Mary A. F. Hotchkiss and as administratrix of the estate of William H. Hotchkiss, and the respective estates, are barred by the statutes of limitation. These statutes are section 1109 of the General Statutes of Connecticut, Revision of 1902, setting the limit for the recovery of real estate at 15 years, and section 1111, Revision of 1902, fixing the limit at 6 years within which an action founded on an express or implied contract must be brought. All of the real estate owned by Henry O. Hotchkiss was conveyed to Mary A. F. Hotchkiss by all of the children, including Nathaniel S. Hotchkiss, father of Mrs. Goodno, on July 22, 1884, and from that date till her death in 1912 she held the legal title of the real estate, claiming to be the absolute owner thereof, and not recognizing or admitting rights of any other person in or to any part of it. The plaintiffs

are therefore barred from asserting any right or title to any of the real estate of which Henry O. Hotchkiss died possessed.

[8] Furthermore, Mary A. F. Hotchkiss denied at all times from 1885, or shortly thereafter, down to her death, any trust relation in any part of the real estate or personal property which she got from her husband's estate, and if, as the plaintiffs insist, there was ever a time when Mrs. Goodno's father could have claimed a trust relation with respect of the property of Henry O. Hotchkiss, Mrs. Hotchkiss denied such relation certainly as early as 1885, so that the statute of limitations then began to run. The general rule that express trusts are not within the statute of limitations does not apply to a trust openly disavowed by the trustee with the knowledge of the cestui que trust, and the statute begins to run from the time of the disavowal, and applies in favor of persons who become trustees by construction of law—as where a person is construed into a trustee of property which he has fraudulently obtained, or where a trust estate is traced into his hands, or where a resulting trust arises. Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; Cone v. Dunham, 59 Conn. 145, 20 Atl. 311, 8 L. R. A. 647; Wilmerding v. Russ, 33 Conn. 67, 76, 77; Currier v. Studley, 159 Mass. 17, 33 N. E. 709.

The opinion of the Supreme Court in Philippi v. Philippe, 115 U. S. 151, 157, 5 Sup. Ct. 1181, 29 L. Ed. 336, is directly in point and adverse to the plaintiffs' contention. On page 156 of 115 U. S. (5 Sup. Ct. 1184) Mr. Justice Woods says:

"Conceding what is contended for by the counsel for plaintiff that the statute of limitations does not run against an express trust, it must be borne in mind that this rule is subject to the qualification that when the trust is repudiated by clear and unequivocal words and acts of the trustee who claims to hold the trust property as his own, and such repudiation and claim are brought to the notice of the beneficiary in such manner that he is called upon to assert his equitable rights, the statute of limitations will begin to run from the time such repudiation and claim came to the knowledge of the beneficiary. Prevost v. Gratz, 6 Wheat. 481 [5 L. Ed. 311]; Oliver v. Piatt, 3 How. 333 [11 L. Ed. 622]; Badger v. Badger, 2 Wall. 87 [17 L. Ed. 836]; Kane v. Bloodgood, 7 Johns. Ch. [N. Y.] 90 [11 Am. Dec. 417]; Bright v. Legerton, 2 De G., F. & J. 606; Wedderburn v. Wedderburn, 4 Myl. & Cr. 41, 52; Merriam v. Hassam, 14 Allen [Mass.] 516, 522 [92 Am. Dec. 795]; Attorney General v. Federal Street Meeting House, 3 Gray [Mass.] 1; Williams v. First Presbyterian Society, 1 Ohio St. 478; Turner v. Smith, 11 Tex. 620."

All claims of the plaintiffs against the estates of Mary A. F. Hotchkiss and William H. Hotchkiss, both deceased, and against Marie O. Hotchkiss, as executrix of the will of Mary A. F. Hotchkiss, and as administratrix of the estate of William H. Hotchkiss, are barred by the Connecticut statutes of nonclaim, limiting the time within which claims must be presented against the estates of decedents. These statutes of limitations relating to claims against the estates of deceased persons are as follows: Section 301 of the Revision of 1902, as amended by Public Laws of 1905, c. 123; section 326 of the Revision of 1902, as amended by the Public Laws of 1905, c. 136; sections 327, 329, 406, 407, 408, 381, 384, 207, and 208 of the Revision of 1902; chapter 37 of the Public Laws of 1907; chapter 75 of the Public Laws of 1911; chapter 224 of the Public Laws of 1913,

amending section 408 of the Revision of 1902, as amended by chapter 215 of the Public Laws of 1909.

[9] Federal courts, in enforcing claims against estates of decedents and executors and administrators thereof, are administering the laws of the state of the domicile, and are bound by the same statutes and rules that govern the local tribunals. Security Trust Co. v. Black River Nat. Bank, 187 U. S. 211, 227, 23 Sup. Ct. 52, 47 L. Ed. 147; Walker v. Walker's Ex., 9 Wall. 743, 754, 19 L. Ed. 814; Aspden v. Nixon, 4 How. 467, 498, 11 L. Ed. 1059; Pulliam v. Pulliam (C. C.) 10 Fed. 53, 76.

[10] The failure of the plaintiffs to exhibit their claim against the estate of Mary A. F. Hotchkiss or William H. Hotchkiss operates as a complete bar to the enforcement of their demand, and no plea of ignorance or mistake can now be of any avail. The law on this subject is forcibly stated by Mr. Justice Seymour in delivering the judgment of the Supreme Court of Errors of Connecticut in Cone v. Dunham, 59 Conn. 145, 161, 20 Atl. 311, 314 (8 L. R. A. 647), supra, as follows:

"The failure to exhibit a claim within the time limited by the court of probate for the presentation of claims against a deceased person's estate forever debars the demand. There is no provision for suspension during the disability of the claimant. It is a statutory bar, which, to quote the language of Lewin in his work on Trusts, p. 866, affords a substantial, insuperable obstacle to the plaintiff's claim, and no plea of poverty, ignorance, or mistake can be of any avail. However clear and indisputable the title, could the merits be inquired into, the limited time has elapsed, and the door of justice has closed. The language of Judge Story, quoted in the defendants' brief, suggests a reason for the strict application of the statute. He says this statute of limitations as to executors and administrators is not created for their own security or benefit, but for the security and benefit of the estates which they represent; it is a wholesome provision, designed to produce a speedy settlement of estates and the repose of titles derived under persons who are dead. If it appears to work harshly in this case, the law is nevertheless so that, whenever this statute comes in, it applies regardless of any hardships which it may work, and we must regard this claim as barred by the failure to present it * * * within the time limited by the court of probate."

[11] Moreover, such a statute is a rule of property, which the Legislature of a state can alone make, and as such is binding on the federal courts sitting in equity. Pulliam v. Pulliam (C. C.) 10 Fed. 76, supra.

There is no ambiguity in the will of Mary A. F. Hotchkiss, and a claim for the construction of the will cannot now be sustained. This contention of the plaintiffs is made with respect of the third paragraph of Mrs. Hotchkiss' will, which provides that:

"The rest and residue of my estate of every kind and description, whether real or personal and including that which I received from the estate of my dear husband, Henry O. Hotchkiss, I direct to be divided into three equal parts, and to be disposed of" as there provided.

The plaintiffs' contention is that it is uncertain whether the testatrix's intention was thereby to include the property in her hands as life tenant, or whether she intended to include only the portion of the income which remained unexpended. It does not seem to me that

the will is susceptible of the construction which the plaintiffs claim for it, as there is no evidence to indicate that Mrs. Hotchkiss at any time after these transfers of property of her husband's estate into her own name made any attempt to keep this portion of the estate separate from what belonged to her in her own right, or that she had any idea of so doing.

[12] But, be that as it may, I am clear that the plaintiffs have no right in this suit to ask for a construction of the will. This court is bound to follow the law of the state in matters necessarily involving property, as well as in the adjustment of claims against estates of decedents, and it is the settled law of the Supreme Court of Errors that no one but an executor or some fiduciary under the will can ask for its judicial construction. Belfield v. Booth, 63 Conn. 299, 309, 27 Atl. 585; Security Co. v. Pratt (C. C.) 64 Fed. 405.

Even the daughter, Marie, as executrix, could not now maintain a suit for a construction of the will, for the reason that the proceedings are entirely at a close, unless some property should be discovered which should be included in the division of the estate. Miles v. Strong, 60 Conn. 393, 397, 22 Atl. 959; Miles v. Strong, 62 Conn. 95, 103, 25 Atl. 459; Foote v. Brown, 78 Conn. 369, 372, 62 Atl. 667; Ackerman v. Union & N. H. Trust Co., 90 Conn. 63, 70, 96 Atl. 149.

If, in the account filed by the daughter, Marie, she has erroneously included in the estate of her mother property which belonged to the estate of her father, and which should have been treated separately, the remedy is an adjudication in the state courts as to these accounts, or an appeal from their allowace or disallowance; but this course has never been taken.

To sustain any of the contentions so earnestly urged, and so elaborately, skillfully, and efficiently presented, by the plaintiffs, would be in the very teeth of the authorities cited at length. However much one may either agree or disagree with the policy adopted by the various members of the Henry O. Hotchkiss household, it seems to me clear and conclusive that a decree should be entered dismissing the bill of complaint, with costs to abide the event; and it is so ordered.

Decree accordingly.